## JOHN J. WILSON et al. *v.* HENRY E. CLARKE.

It is only where there is a total want of evidence tending to charge a defendant, that the court should direct a verdict instantly in favor of a defendant.

Where one of the members of a firm who are a party to a suit, is offered as a witness, against whom a judgment might be rendered; it is *held*, that he is not a competent witness.

It is the settled rule, that where a party or his counsel in the trial of a case is taken by surprise, whether by fraud or accident, on a material point or circumstance, which could not reasonably have been anticipated, and where want of skill, care, or attention, cannot be justly imputed, and injustice has been done, a new trial will be granted : — *Held,* that where the credibility of a party's witnesses has been assailed and discredited unexpectedly to him, it is a sufficient ground to grant a new trial, to enable him to introduce testimony to sustain his witnesses.

In error from the circuit court of Yazoo county; Hon. Robert C. Perry, judge.

The facts of the case will be found in the opinion of the court, and the brief of appellants' counsel.

*N. G.* and *S. E. Nye,* for appellants.

This was an action of replevin instituted in the circuit court of Yazoo county, for the recovery of 153 tier of cypress timber; suit was brought against these defendants, and but one executed the bonds. On the trial, the plaintiff below made out but a weak *primâ facie* case, together with the supposed value of the timber, and rested the case. The defendant introduced Biggs as a witness, who testified that he was the agent of Clark, and sold the timber to defendant Wilson alone, in pursuance of the instructions of Clark. John Morris also testified as to admissions made to him with regard to the powers he had conferred upon Biggs and defendant. ·After examining a few other witnesses with regard to the value of the timber, he proposed introducing one of the original defendants who had not joined in the execution of the replevin bond, and who testified that he had no interest in the result of the suit, that though the timber was lying at the landing of Wilson, Richards & Co., of which

firm he was a member, yet it was the individual purchase of of Wilson, (the same thing had been proved by Hunter). The defendant then proposed to examine him upon points material to the issue, as will be seen by his affidavit read on the motion for a new trial, but the court excluded him. The defendant then requested the court to direct the jury to return a verdict in favor of defendant Johnson, there being no evidence against him, and it being clear that he was improperly joined as a defendant, which the court refused to do; exceptions taken on both points. Some testimony was introduced to show that Biggs had on other occasions made statements contradicting his same testimony, and another witness was examined to impeach the credibility of Morris. The jury returned a verdict for plaintiff, assessing the value of the timber at $1,137.50, (no separate valuation). A motion was made for a new trial upon the grounds of surprise, the refusal of the court to examine Johnson as a witness, the discovery of new testimony, and because the finding of the jury was excessive. The surprise and newly-discovered testimony clearly appear from the affidavits filed and read on the motion for a new trial.

The first error in the record to which we will call the attention of the court, was the refusal to direct the jury to return a verdict in favor of Johnson, so as to render him a competent witness. Not a particle of testimony had been introduced against him, but the proof all went to show that he never was interested in this timber. We cite 1 Greenl. Ev. 356–359, inclusive, and *McAuley* v. *Malcom*, 9 Humph. 192, as exactly in point.

But, being properly joined as a defendant, and having no interest in the result, he was competent. Many cases upon this point are examined, and the direct question settled in *Safford* v. *Laurence*, 6 Barb. 566, and cases cited. It is impossible to see how he had any interest, even if he had been interested in the first instance, the replevin bond executed by Wilson, and upon which judgment had to be entered, would have destroyed his interest. There is no contribution amongst tortfeazors, and of course Wilson could not recover from him.

The affidavits show a clear case of surprise and newly dis-

covered testimony.    Morris was fifty miles from home when his character for truth and veracity was assailed, and he could call upon no witness then to be had to support him; his character as a man of truth is abundantly established by the affidavit of witnesses.    This testimony is not cumulative, because no evidence upon this point was introduced in the court below.    See Grayham on New Trials, 488–493.    There is no pretext for saying that there was a want of diligence; the defence was clearly made out by the testimony of two witnesses, and the assault upon Morris was unexpected, and could not be refuted after the case went to the jury; hence the surprise and the testimony corroborating or sustaining Morris's credibility was not cumulative, because no testimony upon that point had been or could be offered, he being a stranger.

There is an unanswerable objection to the shape of the verdict.    Suit is brought for 153 tier of timber.    Grimmy's testimony is, that a tier is composed of from three to five logs, (ten feet,) as a consequence there was a difference in the value; the verdict is general for $1,137.50, and no separate assessment. In replevin as well as detinue, the value of each article sued for must be ascertained, by the verdict of *Drane* v. *Hilshine*, 13 S. & M. 336.    If execution had issued requiring the sheriff to cause to be restored to plaintiff 153 tier of timber, or its alternate value, $1,137.50, and he had found a portion of the timber, what would have been his guide for further action?    It is in proof that some thirty tier were much longer and more valuable than the rest, and the necessity for a separate valuation is the more apparent, but certainly if it is necessary in an action for thirteen cotton bales to have each one separately valued, the rule cannot be changed when applied to timber, the question is positively settled in regard to cotton bales.    1 How. 227.

The rule is there laid down by the chief justice, as follows: " The judgment should be so framed, that the defendant shall have the privilege of returning any portion of the property claimed, and paying the alternate value of the remainder."

Another, and our last objection to the proceedings below, will be found in the fact, that verdict was rendered in favor of two of the defendants (Johnson and Richards) being improperly

joined, yet judgment is rendered against Wilson for all the costs. If a plaintiff has a right to join two improper parties in a suit, and yet have his costs from the one against whom he makes out his case, he has a right to include a whole community, and make out a case against one and tax him with the costs. This we respectfully submit cannot be done. A party must be responsible for his own misjoinder of parties.

*Burrus* and *Dougherty* for appellee.

1. Courts will not grant new trials unless there have been diligence, and it must appear affirmatively that it could not have been discovered by reasonable diligence ·before the trial. 13 S. & M. 118; 11 Ib. 411; 12 Ib. 615; 2 How. 772.

2. The affidavit of plaintiff in error for newly discovered evidence will be found altogether cumulative, and if it had been present would have been wholly insufficient. There was upon the trial conflict of testimony; the jury had a right to weigh it.

The court did right in excluding Johnson, one of the defendants, because he was a partner in the business with Wilson, and the transaction was also within the scope of their business; besides, it does not appear he was fraudulently made a defendant for the purpose of excluding his competency. The fact of the jury finding in his favor does not show that he was made a party to exclude him.

His competency being refused by the court below, even if this court should determine there was error, yet if his testimony would not have changed the verdict, or materially varied it, then there was no ground for a new trial.

The verdict, it is contended, should have separately valued each tier of timber. We admit, where things are separate and distinct, and have different names, like negroes, horses, &c., the law requires a separate assessment in the verdict; but timber is not so marked nor distinguished, but may well be regarded as parts of one whole, and but one value placed upon them. 13 S. & M. 338.

Mr. Justice HANDY delivered the opinion of the court.

The defendant in error brought this action of replevin against

the firm of Wilson, Richards & Co., of which the plaintiff in error was a partner, for a quantity of timber, under the act of 1842. Wilson alone executed his bond with sureties under the 3d section of the act, and a plea was filed for all the defendants. On the trial, it was proved in behalf of the plaintiff, that the timber was seen at the landing of the defendants near their saw-mill on the Yazoo River, and that the defendant Wilson spoke of it as the Clark timber which he had bought of Biggs in August, 1850. There was also evidence offered as to the value of the timber. It was then proved, on the part of the defendants, by witnesses Biggs and Morris, that Biggs was authorized by the plaintiff to sell the timber, and that he sold it to defendant Wilson for what was considered a full price, and he paid the money. It was proved by Hunter, a witness for the defendants, that he saw Wilson purchase the timber from Biggs; that the purchase was made for himself and not for the firm, they being already sufficiently supplied with timber. Defendants' counsel then moved the court to direct the jury to return a verdict immediately for the defendant Johnson, one of the firm of Wilson, Richards & Co., in order that he might be examined as a witness, which the court refused to do, and the defendants excepted. They then offered said Johnson as a witness to prove that the price, $666.50, paid by Wilson for the timber, was a full and fair price for it at the time, the witness having stated on his *voir dire* that he had no interest whatever in the result of the suit, and that Wilson purchased the timber on his own individual account; but the court refused to permit him to testify, and the defendants excepted.

The plaintiff then introduced two witnesses for the purpose of discrediting the defendants' witnesses Biggs and Morris.

The jury found a verdict in favor of the defendants Richards and Johnson, but in favor of the plaintiff against Wilson, for $1,137.50.

A motion was made for a new trial, because of the refusal to direct a verdict to be rendered for the defendant Johnson, and for the exclusion of him as a witness, because of newly discovered evidence and surprise, which motion was accompanied by the affidavits of Wilson and several other witnesses. Upon the

decision of the court below, overruling this motion, the case is brought here.

In regard to the refusal of the court to direct a verdict to be rendered discharging the defendant Johnson, we think the decision was proper. Had there been no evidence whatever tending to show, or from which the conclusion might have been drawn, that the timber was in possession of the firm, or was held as their property, the court should have directed the verdict instantly in favor of Johnson. 1 Greenl. Ev. § 358. But the plaintiff had offered evidence that the timber was lying at the landing of the firm near their saw-mill; and though this might not be considered as sufficient evidence to charge the firm, yet it could not be said that there was a total want of evidence tending to charge them; and it is only in the absence of all evidence that this power should be exercised by the court.

Nor do we think it was error to exclude the defendant Johnson as a witness without a verdict discharging him. He appeared of record as a party to the suit, and was joined in the plea with his codefendants, and was liable for costs. If the verdict had been against the firm, he would have been bound, and his testimony therefore tending to show the value of the timber to be less than the value proved by the plaintiff's witness, would have been directly to his own benefit. It is not a sufficient answer to this to say that as Wilson alone had executed the bond, the judgment could have been rendered only against him and the sureties on his bond. If the verdict had been against the firm, they would at least have been liable for the damages which might have been assessed by the jury for the wrongful taking or detention of the property; and, in case of such finding, the bond of Wilson might very possibly be obligatory on the firm. For any of these reasons, and under the circumstances of the case, we do not think it a proper case to relax the rule disqualifying a defendant who is a party to the issue, as a witness for his codefendant. *Safford* v. *Lawrence*, 6 Barb. 566, and authorities there cited.

The third ground of error presented is, that the defendant was surprised by the introduction of evidence to discredit the witnesses introduced by him to make out his defence.

It appears from the record, that Wilson purchased the timber from the witness Biggs, and the case depended upon whether Biggs had authority from Clark, to whom it belonged, to dispose of it.  In order to establish that fact, Biggs, who made the sale, and Morris, who had been intimately connected with Clark in relation to the timber, were introduced by the defendant and fully proved it.  The affidavit of the defendant, in support of the motion for a new trial, shows that he relied on these witnesses as entirely sufficient for his defence, and that he had no notice whatever that their credibility would be impeached, but that it was impeached; and he shows by the affidavits of two of the jurors, that but for that, the verdict would have been different.  He states that he was surprised at this impeachment of his witnesses, who were a great distance from their homes, one residing in Tallahatchie, and the other in De Soto county, and it was therefore impossible for him to establish their credibility.  He states that he has learned since the trial that they are men of veracity, and presents the affidavits of two witnesses residing in the county of Morris's residence, and one witness residing in the county of Biggs's residence, testifying to their good character for veracity, and that he believes he can fully vindicate their characters from the attacks made, but which he was wholly unable to do under the circumstances of the case.  He also presents the affidavit of a witness discovered since the trial, testifying to the fact that Biggs was authorized by Clark to make the sale, and fully corroborative of the facts stated by Biggs and Morris.  The affidavits and testimony tend strongly to show a meritorious defence.

This appears to us a clear case of surprise, and such as care and prudence could not provide against.  It is not to be supposed that the defendant could anticipate that two witnesses summoned by him, and relied upon to establish his defence, would be attacked as unworthy of credit on oath, for every man is, in legal presumption, to be considered as truthful and credible until the contrary is shown.  Much less is a party to act upon the supposition that his witnesses will be impeached, and come prepared with a host of witnesses to vindicate their characters.  Such a rule would be, in the last degree, inconvenient

and mischievous. In the present case, the evidence shows a strong probability that the credit of the witnesses attacked could be established, if an opportunity had been allowed, but that it was impossible for the defendant to do so, situated as the witnesses were, and under the circumstances in which they were impeached.

We think this case comes clearly within the rule authorizing the granting a new trial, that is, " when a party or his counsel are taken by surprise, whether by fraud or accident, on a material point or circumstance which could not reasonably have been anticipated, and where want of skill, care, or attention cannot be justly imputed, and injustice has been done, a new trial will be granted." Graham on New Trials, 168, and numerous cases there cited.

The judgment is therefore reversed, the verdict set aside, and the case remanded for a new trial.