# JOSIAH DAILY v. C. C. SWOPE, Guardian, etc.

1. LOCAL ASSESSMENTS FOR LOCAL IMPROVEMENTS.—It is well settled that it is competent for a state legislature to authorize the construction, or to construct, or aid in construction, of local public improvements, by means of local taxation.

2. MISSISSIPPI RIVER LEVEES.—The protection of lands subject to overflow is a proper object for the exercise of this power of local improvement and taxation.

3. GENERAL PRINCIPLE.—Those who are chiefly partakers of the benefits of such local public works should bear a proportionally larger share of the costs.

4. TAXING POWER.—Municipal corporations, counties, or other artificial districts or subdivisions, have no inherent power of taxation. Their right to tax is by delegation from the state.

5. "EQUAL AND UNIFORM TAXATION."—The "taxation" which is required by § 20 of article XII of the constitution of Mississippi, to be "equal and uniform," and upon the *ad valorem* principle, is such taxation as the legislature may impose for the use of the state at large, and does not include assessments on property in a defined locality for improvements supposed to be chiefly beneficial to a specified class of property, and which for this reason is charged with the expense; nor do any general tax laws or exemptions apply to such local assessments.

6. CONSTITUTIONAL AND STATUTORY CONSTRUCTION.—The constitution is a law, differing from a statute only in its paramount force in cases of conflict: and it is a safe rule to give to terms used in the constitution such meaning and application as they have received from legislative and judicial interpretation; except in cases where it is apparent that a more general or restricted sense was intended.

7. SAME—JUDICIAL CONSTRUCTION IN OTHER STATES.—When provisions have been adopted into the constitution of this state, from those of other states, it must be presumed that the framers of our constitution were conversant with, and designed to adopt, also, the construction put upon such provisions by such other states.

8. PRINCIPLE OF "EQUALITY AND UNIFORMITY."—A tax, whether for state revenue or local objects, must rest equally and uniformly upon all the property selected, according to its situation and condition, and upon the basis of benefits.

9. MODE OF ASSESSMENT.—The legislature is not confined to any one mode of assessment, but may adopt the front foot, square foot, square acre or *ad valorem* basis, and the judiciary will not, in either case, impute improper motives, but will presume that it was intended to apportion the expense upon the constitutional basis, unless the contrary plainly and manifestly appear.

10. CASE AT BAR.—It is competent for the legislature to fix the value of several classes of land supposed to be benefited by levees for preventing overflow, and to levy a tax of $2\frac{1}{2}$ per cent upon this valuation for the expenses of erecting levees; and this court will not inquire whether this mode apportions the expenses as nearly to the measure of benefits as some other mode might have done; but will leave that as the legislative discretion has determined.

11. REMEDIES.—The judiciary is powerless to relieve against legislation; the only objection to which is, that it is hard and oppressive. The only remedy is in the legislature or through the ballot-box.

ERROR to the circuit court of De Soto county. FISHER, J.

On the trial of this cause, it was agreed by° counsel that "the court may hear and determine, without regard to the pleadings, all constitutional questions growing out of the levee law involved, under section 20 of article 12 of the constitution, and which may grow out of that clause as to uniform and equal, and *ad valorem* taxation; and also any constitutional question arising upon the said levee law, as to want of notice to tax-payers, and want of demand for the tax, and want of provision for an adjudication of delinquency under the law."

*L. Q. C. Lamar* and *Henry Craft,* for plaintiff in error.

I. It is fully settled that the legislature has the constitutional right to impose special assessments upon property benefited by local improvements (of a public nature) with reference to that benefit; and that this local assessment may be imposed on any district or extent of territory less than the whole state, whether the people to be affected by them are citizens of the same county or resident of the same political district or not Alcorn v. Hamer, 38 Miss. 652; Am. Law Reg., July, 1869, p. 411; Cooley on Const. Lim. 495, 497; Williams v. Cammack, 27 Miss. 210. This power is not questioned; but appellees set up the theory that the constitutional provision requiring taxation to " be uniform and equal," takes from the legislature all power to impose these local assessments upon only one species of property in the district; and that as this levee law does not spread the burden equally upon all the property in the district, but apportions it upon the property benefited by the improvement, the rule of uniformity is violated. This is, indeed, a literal construction; and if adopted, will strip the state government of what has been its fairest and most essential prerogative, *z. e.*, the power to select its objects of taxation with a view to the public welfare, convenience

and right. This is a construction unsupported by the adjudications, inconsistent with other provisions of the constitution, and with all the recognized principles of legislation. The provision requiring taxation to be uniform and equal, has never been held to mean that everything which the legislature might make taxable, shall be actually taxed. Smith v. Aberdeen, 25 Miss. 462.

To render taxation "uniform," it is only essential, first, that the objects of taxation should be within the limits of the taxing district; secondly, that the apportionment of the burden should reach all the objects selected for taxation. Cooley on Const. Lim. 499, *et seq.* The legislature has power to select at its discretion the objects of taxation. The requirement of equality and uniformity, therefore, extends only to such objects of taxation as the legislature shall determine to be properly subject to the burden. Ib. 515; Kneeland v. Milwaukee, 15 Wis. 454; Williams v. Mayor, etc., of Detroit, 2 Mich. 560; Woodbridge v. Detroit, 8 ib. 274. "All laws of a general nature shall have a uniform operation throughout the state." Const. of Ohio. A statute applicable to all cities of a certain class was held constitutional, though there was in fact but one city in the state of that class. Walker v. Potter, 18 Ohio (N. S.) 85. Human experience shows that a true uniformity and equality in taxation is practically unattainable. Potter's Dwarris on Statutes, 418; Cooley on Const. Lim. 513. Any other construction would annul all laws exempting school and hospital property, farming produce on the lands of the producer, etc., cattle and farming utensils, etc. It would forbid the board of supervisors in any one county, no matter what the exigencies of their county demanded, to levy a tax for county purposes either higher or lower in rate than the tax levied by any other single county in the state. It would prohibit the assessment of local levies for local im-

provements; and, since a general tax for such a purpose is indisputably unconstitutional, this would be practically a prohibition altogether of local improvement. The proper construction is, that the tax must be imposed on the property to be benefited; and the rule of equality and uniformity is an equal degree of benefit to each person in the use made of the tax. The application of this rule requires that the land and its owners, which reap the only benefits arising from the impost, shall bear the burden, while the property not benefited should not be taxed. Potter's Dwarris on Statutes, 418; Cooley on Const. Lim. 506; the People v. the Mayor, etc., of Brooklyn, 4 N. Y. 419; Scoville v. Cleveland, 1 Ohio (N. S.), 126; Hill v. Higdon, 5 ib. 243; Marion v. Epler, ib. 250; Maloy v. Marietta, 11 ib. 636 ; City of Peoria v. Kidder, 26 Ill. 351; Reeves v. Treasurer of Wood Co., 8 Ohio (N. S.), 333; Garrett v. St. Louis, 25 Mo. 505; Uhrig v. St. Louis, 44 Mo. 463; Smith v. Aberdeen, 25 Miss. 462.

II. It is claimed by defendants in error, that this tax is unconstitutional in that it is not *ad valorem*. 1st. These local assessments are not controlled by the general constitutional requirements in regard to taxation; 2d. Even if they were so controlled, this particular assessment is not, in fact, obnoxious to the *ad valorem* provision of the constitution.

1. Assessments for such improvements, although exacted by virtue of the taxing power, and being undoubtedly taxes, in the strict acceptation of the term, are judicially distinguished from general taxes; being treated and designated as *assessments* rather than *taxes*, properly so called. Cooley on Const. Lim. 496–8, 499, note 4; Potter's Dwarris, 412. Therefore, these local assessments are not covered by general provisions in the constitution on the subject of taxation. 10 Wis. 242, 282; Bond v. Kenosha, 17 ib. 284. There are many imposts which cannot be ac-

cording to value, such as license fees for particular employments, tolls and ferriages, stamp duties and the like, taxes on licenses, etc., and are by implication excepted by the general provision. Cooley on Const. Lim. 496; Coulson v. Harris, 43 Miss. 737; Williams v. Mayor, etc. of Detroit, 2 Mich. 560; City of Peoria v. Kidder, 26 Ill. 357; People v. Mayor, etc. of Brooklyn, 4 N. Y. 419; Matter of Mayor, etc. of New York, 11 Johns. 77; Sharp v. Spier, 4 Hill, 76; Yeatman v. Crandall, 11 La. Ann. 220; McYehu v. Mathers, 21 Ark. 40; Emery v. San Francisco Gas Co., 28 Cal. 348; Nicholls v. Bridgeport, 23 Conn. 189; Schinley v. City of Alleghany, 25 Penn. St. 128; Wray v. Pittsburg, 46 Penn. St. 365; McBride v. Chicago, 22 Ill. 574; Chicago v. Larned, 34 ib. 203; City of Lexington v. McQuillan's heirs, 9 Dana, 513; Barnes v. Atchison, 2 Kansas, 454; Hines v. Leavenworth, 3 ib. 186; St. Joseph v. O'Donoghue, 31 Mo. 345; Egyptian Levee Co. v. Hardin, 27 ib. 495; St Joseph v. Anthony, 30 ib. 537; Burnet v. Sacramento, 12 Cal. 76; Yeatman v. Crandall, 11 La. Ann. 220; Wallace v. Shelton, 14 ib. 498; Richardson v. Morgan, 16 ib. 429; Northern Ind. R. R. v. Connelly, 10 Ohio (N. S.), 159; Baker v. Cincinnati, 11 ib. 534; State v. Dean, 3 Zab. 335; State v. Mayor, etc. of Jersey City, 4 ib. 662; Bond v. Kenosha, 17 Wis. 289.; City of Fairfield v. Ratcliff, 20 Iowa, 396; Municipality No. 2 v. White, 9 La. Ann. 447; Cumming v. Police Jury, ib. 503; Northern Liberties v. St. John's Church, 13 Penn. St. 107; McGee v. Mathis, 21 Ark. 40; Goodrich v. Winchester, etc. Turnpike Co., 26 Ind. 119; Emery v. Gas. Co., 28 Cal. 345; Palmer v. Stremple, 29 Ind. 329; Dergan v. Boston, 12 Allen, 223; Le Fever v. Detroit, 2 Mich. 586; Lockwood v. St. Louis, 24 Mo. 20.

2. Taxation shall be equal and uniform throughout the state. All property shall be taxed in proportion to its value, to be ascertained as directed by law. Const.

of Miss. art. XII, sec. 20. In the act it is declared
" that a uniform charge and assessment of two per cent
per annum on the value of every acre," etc., " is hereby
fixed," etc., and, at the same time, that value is ascer-
tained and fixed by this very law. As the constitution
expressly directs the valuation to be declared in some
method, to be fixed by law, and rejects the burden of
declaring how it shall be made, it is as fully competent
for the legislature to adopt this course as any other.
Cooley on Const. Lim. 496.

This cause comes within that class of cases which in-
volve constitutional questions that this court is incompe-
tent to adjudicate or consider—cases of confidence and dis-
cretion. Cooley on Const. Lim. 40, 41; Martin v. Mott,
12 Wheat.; Gillenwaters v. Mississippi & Atlantic R. R.
Co., 13 Ill. 1; State v. Hancock, 1 Kan. 178; 29 Ind. 409;
Miller v. the State, 3 Ohio (N. S.), 483; Cooley on Const.
Lim. 80. Every presumption is to be indulged in favor
of the power of taxation. If the case is within the
principle, the proportion of the contribution and other
details are within the discretion of the taxing power.
The assessment, when made in pursuance of law, is final
and conclusive, and cannot be reviewed by any other
tribunal. Hammett v. Philadelphia Am. Law Reg.
July, 1869, p. 419; Commonwealth v. Woods, 8 Wright,
113. See also City of Lowell v. Oliver, 8 Allen, 253;
Coulson v. Harris, 43 Miss. 739.

The power of the legislature to assess lands directly,
and to enforce the payment of the taxes so assessed, by
a sale, without the intervention of any ministerial
officer, in the first instance, or of any further notice in
the second, has been judicially recognized. Rouse v.
Hampton, Law Times U. S. 198, by Judge Hill. The
act of 1858, which was of a character very similar to the
one in question, and which directly assessed the lands
at ten cents per acre, was held to be constitutional.
Alcorn v. Hamer, 38 Miss. 652. A law which assessed

a tax of two hundred dollars on billiard saloons is constitutional. Coulson v. Harris, 43 Miss. 728.

*A. H. Handy*, for defendant in error.

Before the adoption of the present constitution, there was no limitation upon the legislative right of taxation. It rested upon the right of eminent domain, so far as it was taxation proper; and not the taking of private property for the public use without compensation.; and this was true, whether the taxation was for general or local purposes. For it is held "that in point of principle and constitutional power there is no difference between taxes imposed for a general purpose, and those imposed for a public local purpose. Williams v. Cammack, 27 Miss. 223; Hamer v. Alcorn, 38 ib. 752, 754; Smith v. Corp. of Aberdeen, 25 ib. 462.

But this broad and dangerous power was restricted and defined by the present constitution (art. XII, sec. 20); and what was before matter of discretion with the legislature was limited, and the mode and manner of its exercise was prescribed. Since the power, whether for general or local taxation was without limitation, and, in both respects, rested on the same principle, the framers of the constitution thought fit to regulate and define its exercise. They thought fit to establish rules applicable to the whole power of taxation by legislative act. And the first great canon they ordained was, that "taxation shall be equal and uniform throughout the state," that is to say, that whenever taxation should, in the judgment of the legislature be necessary, whether for local or general purposes in the state, it should be "equal and uniform," imposing the burden of it equally and with uniformity upon all those upon whom it would bear. The principles of equality and uniformity are indispensable to all legal taxation, general or local. 34 Ill 203, 276, *et seq.*; 5 Ohio, 15; 10 Ohio (N. S.), 165; 9 La. Ann. 447, 450, 504; 9 Wis. 421, 422; 10 ib. 237;

11 ib. 35; 9 La Ann. 503; Cooley on Const. Lim. (2d edit.) 499; 3 Ohio, 15.

Conceding that the power of local "assessment" is not embraced within the provisions of art. XII, sec. 20 of the constitution, according to the adjudged cases relied on by the plaintiff in error, yet in all those cases the principle of assessment according to the value of the property is the basis on which they are maintained, and was provided for in the laws under which they were imposed. 11 La. Ann. 220; 21 Ark. 51; 28 Cal. 346.

But here an arbitrary and unequal value is fixed by the act in question as the basis of the two per cent tax. Different kinds of lands in the same county are valued by legislative rescript, and a different value from that is fixed for the same kind of lands in other counties. The rule of assessment is arbitrary, and a violation of the powers of the legislature over the subject-matter.

The constitution, in addition to requiring taxes to be equal and uniform, provides that all property shall be taxed according to its value, to be ascertained as directed by law. The latter provision clearly applies to all taxes imposed by the legislature. But how is the value to be ascertained "as directed by law?" Does this mean by the arbitrary rescript of the legislature, without full evidence upon the subject, or opportunity of parties to be heard? By no means. But it means an assessment and valuation by the usual mode known to the laws of the land, by which the true value of the land may be ascertained. Cooley on Const. Lim. (2d edit.) 496.

The legislature is not competent to perform this duty, and adjudicate upon facts in individual cases, so far as to affect private rights and to deprive a person of his property. 3 Litt. 472, 478; 8 Mich. 301. And the constitution manifestly contemplated that the valuation should be assessed according to general rules of law, as

prescribed in the Code of 1871 (sec. 1675), and the same principles of assessment were stated in the Code of 1857.

*H. H. Chalmers,* on the same side.

If the adjudication of this court, in Griffin v. Mixon is the law of the state, the act is palpably unconstitutional.  In the act of 1850 is provided some sort of notice, and a tribunal to adjudge the delinquency of the owners of the property taxed.  But in the act under consideration there is neither.  Indeed, the act of 1850 provided for the forfeiture of lands already delinquent, all the necessary steps for notice, assessment, correction thereof and payment were provided by the general revenue laws in force at the time.  Here, no such things are recognized as being necessary.  That they are essential to the validity of all tax laws, see Blackwell on Tax Titles, 184, *et passim.*

In all those states where tax laws similar to the one under review were held to be valid, there was no clause in their constitution requiring taxes to be *ad valorem.* Such was the case in People v. Brooklyn, 4 Comst. 427; McMasters v. Commonwealth, 3 Watts, 292; Kingby v. Shaw, 19 Penn. St. 260; 23 Conn. 189; Lexington v. McQuinlan, 9 Dana, 513; State v. Dean, 4 Zab. 336.

In Ohio, where there is an *ad valorem* provision in the constitution similar to ours, a law fixing an assessment for paving a street on adjoining lots without regard to value, was held to violate the provision, though it was sustained upon another clause of the constitution expressly authorizing it, which our constitution does not contain.  Hill v. Hidgon, 5 Ohio St. (N. S.) 246; see Weeks v. Milwaukee, 10 Wis. 242; Lumsden v. Cross, ib. 282; Municipality No. 2 v. White, 9 La. Ann. 448; Larned v. Chicago, 34 Ill. 203.  "The case in 12 Cal. was decided on the constitution of that state, which does not contain the provision which ours contains, and seems to us, with all

the other cases referred to by counsel for plaintiff in error, to be based on wrong assumptions and unsound principles." 34 Ill. 281.

Is the doctrine that this *ad valorem* provision of the constitution does not apply to local assessments correct in principle? What difference in principle is there between a " tax " and an " assessment ?" Taxes are defined to be " charges or burdens upon persons or property for public purposes." 11 Johns. 80. Is not an " assessment." the same ? It is folly to say that local assessments are derived from the power of taxation, but are not governed by the constitutional restrictions. The absolute impossibility of replying to this proposition has driven the advocates of local assessments, in those states where the constitution is similar to ours, into the most painful embarrassments and conflicting positions. See 6 Humph. 368; 23 Conn. 189. In those states where it rested on eminent domain, they say that it does not infringe the constitutional provisions requiring compensation to be made, because the compensation is paid by the benefits conferred. But in this state the compensation must be in money, and not in benefits. Beatty v. Brown, 32 Miss. 228.

All the authorities agree that the tax, whether general or local, must be uniform throughout the district on all the property upon which it is assessed. Cooley on Const. Lim. 495, 496, 500–1; Knowlton v. Supervisors, 9 Wis. 410; Bank, etc. v. Hines, 3 Ohio (N. S.), 15; 10 Wis. 242, 282; 9 Dana, 513.

SIMRALL, J.:

The question which was argued in this cause and submitted for decision is, whether the levee law of 1871 conflicts with the 20th section of the 12th article of the constitution. We have bestowed such reflection upon the subject as the pressure of other duties would allow.

It is well settled in this state, in nearly all the states,

and by the supreme court of the United States, that it is competent for a state legislature to authorize a county, city, or town, or a district composed of several counties, or parts of them, to construct local improvements of a public character, or to aid therein, by means of taxes, to be imposed upon and collected in the county, town, city, or district. Indeed, the counsel on both sides agree in this.

It is also conceded, as settled, in Williams v. Cammack, 27 Miss. 270, and Alcorn v. Hamer, 38 Miss. 652, that leveeing the Mississippi river, so as to protect the low lands subject to inundation from overflow, is a proper local object, that may be constructed, by means of taxes collected within a district defined by the legislature.

The debatable ground begins with an alleged violation of the constitution in the "imposition" of the taxes. The section (20) is, "taxation shall be equal and uniform throughout the state. All property shall be taxed in proportion to its value, to be ascertained as directed by law." The 8th section of the statute is, "for the purpose of building, maintaining, constructing and repairing the levees, a uniform charge of two per cent per annum, on the value of every acre of unimproved and improved land. The unimproved land, for the purposes of the assessment, is fixed at $5 per acre, except Sunflower and Tallahatchie, which is valued at $3 per acre; the improved and cultivated lands at $30 per acre, except in the two counties above, shall be estimated at $20 per acre."

The taxing power in the state and the United States is concurrent on most subjects. Whilst the state may not tax the agencies and instrumentalities employed by the latter, within the state, to carry out its legitimate policy, it may nevertheless impose upon all the inhabitants, and upon all the property within its limits, such taxes for the purposes of its administration and policy

as it chooses, taking care to avoid those things that exclusively pertain to the control of the general government. If the tax be upon the lands, personal effects, and other species of property, within the state, subject to the above restriction, it is legitimate, unless it conflicts with some limitation or prohibition of the state constitution.    This is true both as to the rate and the objects upon which it operates.

The delegation of the taxing power is quite as old as the legal history of the country and people, from which we have descended, and from which our jurisprudence and many of our constitutional principles were derived. The municipal taxation of cities and towns, for local uses, and other territorial subdivisions, for assessing poor-rates and repair of highways, are of very ancient origin in Great Britain.    The colonists brought over with them these ideas of local polity; and, according to the circumstances of a new country, adopted them. Hence the territorial division of the colonies into counties, towns, other districts, etc., and the authority to make assessments within the locality for special local purposes; when the elder colonies passed into states, the system was continued.    There cannot be found a period of time upon this continent, after society was large and compact enough to be organized, that it was not settled upon this basis.    The several state constitutions were adopted with reference to this system thoroughly established in the traditions and practice of the people. The needs of these local bodies could hardly be uniform.    The construction of court-houses, jails, bridges, school houses, the opening and paving of streets, sewerage, etc., would vary from year to year, requiring increased local taxation.    There would be a class of local improvements necessary in a city, or a rural district, which would bring special benefits to a class of the people, or a class of property holders, which would not be common to all the inhabitants of

the city, or district.  It would be just, therefore, that those who are chiefly partakers of the benefits should bear proportionally a larger share of the burden of the cost.  The grading and paving of a street increases the value of the adjacent property.  Whilst the whole population enjoy the advantages of improved facilities for commerce and locomotion, yet the owners of the lots and houses touching the street, have an addition to the money value of their property in a much larger degree than property holders in other parts of the city.  It would be "equality," then, to assess such property to pay for the cost of the work.  There may be necessity also to drain large districts of agricultural lands, or to fence off the water by dykes and levees; where the benefits would be enjoyed by the entire local community, it would be just that all, in the degree of the advantage reaped, should share in the expense.  To erect such territory into an artificial district, and do the work by contributions in the form of assessment upon some equal and equitable basis, would be simply to adopt the analogy of local taxes by the counties and cities.  The one has as much support from reason as the other.  And both rest upon the same principle. The county or city has no inherent right of taxation. Both of these political organisms exert the taxing power by delegation from the state.  The appointed organs for the county, with us the board of supervisiors, the mayor and council of the city, tax by virtue of authority conferred by the legislature.

It is quite notorious that the needs of a city are manifold.  Eleemosynary institutions, hospitals for the indigent sick, schools, fire department, police, streets, pavements, are of them.  To supply these common and indispensable demands upon the corporate funds requires a rate of taxation very much higher than the state ever need impose for its necessities.  It is quite well known, too, that the system of taxation in the city has greatly

differed from that used by the state, both as to rate and apportionment. This always has been so. Long experience has approved the policy. Indeed, it would be quite difficult to administer the affairs of such a corporation, if it is subject to the constitutional restriction on the subject of taxation. What is true of the municipal corporation would, to a great degree, be true of any territorial district created by the legislature to construct a public improvement for its benefit.

The constitution was framed for a people who were accustomed to local bodies with the power of taxation, who had derived the system, in part, from the mother country. The constitution should be read in the light of this fact, and so read, if no violence be done to its letter and spirit, as to produce harmony, and not interrupt the operations of the body politic in its larger and lesser organisms. For an excessive use, or an abuse of taxation (within constitutional powers to tax), the remedy was wisely referred by Chief Justice Marshall, in McCullough v. Maryland, 4 Wheat. 428, to the constituent body, upon whom the evil lies, and not to the courts. Oft returning elections give to the people an ample corrective for such evils. In the same judgment, it was said that "taxes cannot be imposed without apportionment, and the power of apportionment is unlimited, unless it be restrained as a part of the taxing power."

The constitutional injunction is, "that taxes shall be uniform throughout the state." "All property shall be taxed proportioned to its value." What is meant by "uniform"? If it means that the property holder in every county in the state shall pay the same rate upon one hundred dollars worth of property (which would approximate absolute equality and uniformity), the answer is, such an interpretation, put in practice, would make it impossible to administer government on the plan and according to the scheme contemplated in the constitution. For the duty of building and repairing

roads, bridges, court-houses, jails, is committed to the county by means of taxation. If the public buildings of a county are destroyed by fire, and its bridges are swept away by a flood, it is manifest that it needs more money to restore them than the county where no such calamities have occurred. But, upon the principle under discussion, if the local authorities cannot increase the rate, the duty cannot be performed. The city of Jackson is part of Hinds county. The property within the city contributes its *quota* to county purposes, but over and above that it pays corporation taxes for its municipal purposes. These may be as great as state and county taxes together, whereby the property owner in the city may pay twice as much on the hundred dollars worth of property as the rural owner in the same county, and it might be four times as much as the rural owner of same value of property in an adjacent county. It is absolutely impracticable to administer the local administration of the counties, cities and incorporated towns on the basis of a given value of property paying the same amount of taxation in all parts of the state.

Taxation, as used in the 20th section, means such taxation as is imposed by the legislature for the uses of the state at large, or the county. The constitution of 1832 did not contain the restrictions contained in this section. The convention sought to devise a rule by which taxation, imposed for the general and ordinary expenses of the state, county and administrations, should operate equally in all parts of the state. No discriminations shall be made which would disturb uniformity. And when the rate has been determined, the assessment shall be on the *ad valorem* principle. These two principles, it was believed, would more equally and equitably apportion the burden of supporting the government than any other. There has been a good deal of discussion of late years, whether the power of taxation rested

upon the right of eminent domain, or the exercise of independent sovereignty. It is quite sure that the government can so far trench upon private ownership as to impose a charge upon property in the form of a tax, and may make the property itself responsible. But the true idea of a tax is a debt to the state, payable in consideration of the protection and security of person and property, and other benefactions of government. The rich have more at stake in property than the poor; a tax imposed on the *ad valorem* principle exacts more, but the protection is wider. The privation of private ownership, and diverting the property to public use, is an enforced sale justified by necessity, for which compensation in money is made. Both are referable to sovereign rights, but there the analogy ends. There has grown up in this and the other states a species of taxation which is quite distinguishable from that meant in the 20th section. It is the imposition on property of an assessment, in a defined locality, to make some local improvement supposed by the legislature to be specially beneficial to a class of property. The property thus benefited is charged with the expense, whilst other property is exempt. Such legislation proceeds on the theory that the burdened property is enhanced in value, and the owners are benefited over and above the other inhabitants. If the constitutional restriction applies to such local assessments, it is plain that they can not be sustained.

In this age, where so much is undertaken and accomplished by associated effort, voluntary and otherwise, these subjects in one form or other must have been the frequent subjects of judicial discussion.

First, how far do general constitutional provisions and statutes apply to local bodies like towns, cities, counties and districts.

The general statute of New York enacted, "no real estate belonging to any church shall be taxed by any

law of this state." It was held that a church was liable for an assessment to improve the street, 11 Johns. 77 ; 4 Comst. 433. The general law having no application to such an assessment. In New Jersey a railroad company claimed exemption under its charter from a similar tax. The charter was, " shall pay 1½ per cent upon the capital stock, and no other or further impositions shall be levied or imposed on the company." 3 Deutch. 187. Yet the exemption was denied. In various forms the same principle has been applied. Lockwood v. City of St. Louis, 24 Mo. 21 ; Northern Liberties v. St. John's Church, 13 Penn. St.; City of Baltimore v. Proprietors of Green Mount Cemetery, 7 Md. 517. The charter of this company provided that it " should not be liable to any tax or public imposition whatever." The court say that this only relieved the property from all revenues imposed for ordinary purposes, and did not apply " to such charges as are inseparably incident to its location in regard to other property." The charge attempted to be evaded was an assessment for improving a street. To the same effect is Canal Trustees v. City of Chicago, 12 Ill. 405.

The constitution is a law, differing only from a statute as it is of superior and paramount force, irrepealable by the legislature, and which prescribes, where it conflicts with a statute. When the framers of the constitution employ terms which, in legislative and judicial interpretation, have received a definite meaning and application, which may be more restricted or general than when employed in other relations, it is a safe rule to give to them that signification sanctioned by the legislative and judicial use. We find that, going back to the earliest colonial times, and thence through the history of these states, there have existed two distinct systems of taxation ; one, the more general, referring to the impositions and assessments, for the general, usual and ordinary purposes of the state and the county

and municipal bodies; the other, more confined and special, imposed for the object of accomplishing some local improvement or amelioration (too large for private enterprise and means), and in which the lesser community are especially interested. It had, for many years before the adoption of the present constitution, been the practice to allow existing political subdivisions, such as the county or incorporated city, to make local ameliorations of peculiar advantage to a class of property-holders, by assessments on their property. So, too, where a community larger than a county had a like special interest in a public local work, such community were included in a defined geographical district, and the work done by a like assessment on that portion of it, whose property was thereby increased in value. The levee districts are appropriate examples.

It would not be a wise rendering of the constitution, to so construe it, as to interrupt and destroy this old and established order of things, unless we can discover a plain and manifest purpose to do so. To hold that the 20th section must apply to these local and district assessments would utterly abolish the system. To confine it to those taxes which are for the usual and ordinary revenues of the state and counties would accomplish no such result. The tenor of the instrument in other provisions germain to the subject of taxation shows that it must have had that limitation. The 14th section of the 12th article contemplates that a county, city or town may afford material aid to public works which add to their wealth, prosperity and convenience, such as a railroad, by becoming a stockholder therein, or lending its credit thereto. To a very large degree, the great railroads in this state have been built by county, city and town aid; loaning their credit in the form of bonds, and providing for the interest and ultimate redemption of the principal, by taxation. This section looks to a continuation of that mode of lending

aid, but attempts to guard against its improvident abuse. Such aid cannot be supplied, except upon the predicate that taxes may be levied for that special object. This suffices, for the illustration without recurring to other parts of the instrument.

As we have remarked, the 20th section was for the first time placed in the new constitution; it is not to be found in either that of 1817 or 1832. We must suppose also, that the convention were conversant with the interpretation which had been put upon a similar provision in other state consitutions; and' that they meant also to adopt, with the words, the judicial construction of them in the other states. The 20th section is a literal transcript of the constitution of California. In Burnett v. Mayor of Sacramento, 12 Cal. 83, the same question as arises here was presented. It was held that the section only applied to that charge or imposition upon property to raise funds to defray the expenses of the state government, or of some county or town. It has no reference to "special assessments for local improvements, in which individuals are benefited by the increased value of their lands, and in which the public has only a limited interest. The same question was thoroughly reconsidered in Emory v. San Francisco Gas Co., 28 Cal. 348, and the doctrine of the previous case re-affirmed. A similar provision is contained in the constitution of New York. In the People v. the Mayor of Brooklyn, 4 Comst. 84, the subject received an exhausting examination. The reasoning of that court is so satisfactory and conclusive, that it has been accepted as putting the question at rest. The result reached, followed by a great many of the states, is, that the constitutional restriction does not apply to assessments to defray the expenses of local improvements and that it is competent to apportion the assessment, according to the benefits received; and that any general plan of apportionment may be adopted by the

taxing power, that it may deem just and equitable. Higdon v. Hill, 5 Ohio, 246; Garrett v. City of St. Louis, 25 Mo. 508; 7 Md. 536, *supra*; Nichols v. Bridgeport, 23 Conn. 206; 19 N. Y. 118; Muncipality No. 2 v. White, 9 La. Ann. 452.

The cases are very numerous, where the controlling consideration was the benefit supposed to be received in the enhanced value of property. Reeves v. Treasurer of Wood County, 8 Ohio St. 337. The assessment was for the purpose of draining the low lands of northwestern Ohio. In Railroad Company v. Connolly, 10 Ohio St. 162, under constitutional restrictions like ours, it was held (to grade and pave a a street) an assessment according to front measurement, as by the foot, or upon the value of the lots, were either within the competency of the taxing power. To the same effect is Woodbridge v. City of Detroit, 8 Mich. 276; City of St. Joseph v. Anthony, 30 Mo. 541; Garrett v. St. Louis, 25 Mo. 509.

Necessarily, a tax, whether levied for state revenue or for a local object, must be uniform in the sense of being apportioned equally upon all property selected by the legislature or the delegated taxing authority for its application. If imposed upon real estate, it must be upon all real estate in the same situation and condition, so that the burden on each parcel will bear a proportion to every other. The judicial department, in reviewing the acts of a co-ordinate department of the government, must impute proper motives, and a faithful effort to discharge public duties. It is not to be supposed, therefore, that it was the intent of the legislature to discriminate in favor of the property of one citizen at the expense of that of another, when both properties are in a like situation. We must assume that the imposition of local assessments, whereby the value of land within a district will be increased, that the legislature designed to distribute the expense among the

land owners on the principle of apportionment indicated, until the scope and meaning of the language employed drives the judiciary from that position.

The authorities establish the proposition that such assessment may be made on the basis of benefits, and further, that the legislature is not shut up to any one mode of apportionment to grade and pave the streets of a city. The expense may be apportioned among those who own the lots adjacent, either by the running foot of frontage, the square feet of the area, or upon the *ad valorem* basis. It is legislative discretion to adopt the one mode or the other; if the front foot be selected as the rule, it is not for the judiciary to say that, in their opinion, the square foot or the *ad valorem* plan will be more equitable and uniform.

To provide a fund, the legislature could impose the tax, specially, according to acreage or *ad valorem*. The plan, as defined in the eighth section of the act, possesses the feature of "uniformity," and also of "value." An analysis of the "act" discloses, quite clearly, that the cost of this work was to be apportioned upon all the lands within the district, according as their owners may be benefited. And secondly, to the end that the apportionment might be equal, each acre should be assessed according to value. But it is objected, that the legislature declared, arbitratarily, the value—cultivated lands in the river counties, at $30 per acre, similar lands in Tallahatchie and Sunflower, $20; wild lands in the former counties, $5 per acre, and in the latter, $3 per acre—and upon this valuation assessed a tax of 2½ per cent, *ad valorem*.

If the legislature had appointed a specific tax per acre, so as to impose upon the improved and cultivated lands in the river counties, the exact amount that would be produced by 2½ per cent on $30, the value of an acre, to wit, 75 cents per acre; and a like specific tax on all other lands, as classified in the act, it would

hardly be doubted that such tax could not be success-fully assailed. Precisely that result is reached in the form adopted. The legislature fixes the value of the several classes of land, and levies the 2½ per cent on that value. The considerations which control are three: first, the location, whether in a county bordering upon the Mississippi river or not; second, whether improved and cultivated land or not; third, whether wild lands or not. These elements enter into the calculation of the value.

The same result is reached as if the legislature had determined to impose a specific tax upon the acreage, but in order to vary and apportion the rate according to all those considerations and facts, had concluded to assess the cultivated lands in the river counties 75 cents per acre; the wild lands 12½ cents per acre, and so on, for such lands in Sunflower and Tallahatchie. The Egyptian Levee Co. v. Hardin, 27 Mo. 495, brought into adjudication a similar question. The legislature had chartered a similar company where corporators were the land owners embraced in the district between the Des Moines, Fox and Mississippi rivers, "to construct levees and dig canals, and to raise the funds necessary, by taxation upon the lands, not exceeding one dollar per acre. The towns of Churchville and Alexandria, within the district, were excepted out of the operations of the act. The objection to the tax was, that it ought to have been *ad valorem.* The constitution of Missouri requiring "all property subject to taxation, to be taxed according to value," the court held that the constitutional pro-vision only applied to taxation in its ordinary, usual, and received sense, when the money so raised goes into the state, county, city or town treasury, for usual and general purposes, and does not extend to such local assessments; therefore, the legislature was not limited to the *ad valorem* basis, but may apportion on the theory of advantage to the land proprietors; nor is it the

province of the judiciary to interfere, if the plans adopted may not distribute the burdens according to the measure of benefits, as well as some other might. When the case does not come within the constitutional restrictions, the law-making department of the government is entrusted with the whole subject. For injustice in the abuse of power, the remedy is to introduce a change or repeal of law by the legislature, in the forms provided in our system of government. The judiciary can not enforce a scheme of its own devising, and is powerless to remedy the evil. McCulloch v. Maryland, 4 Wheat.; Providence Bank v. Billings 4 Pet. 514; Williams v. Cammack, 27 Miss. 219.

In all of the levee laws the discriminating feature exists. In that of 1850, applicable to Issaquena county, 10 cents per acre was levied on lands within ten miles of the river; on those more remote, 5 cents per acre; whilst lands outside the levee, between it and the river, were exempted altogether. The law was assailed in all these features in Williams v. Cammack, but without success. The court resting upon the ground that the legislative power was plenary, and the courts would not interfere for a supposed abuse.

These taxes need not be assessed by the county assessor, nor collected by the sheriff as tax collector. The usual practice has been to provide other agencies.

Much has already been said in answer to the objection, that the legislature need not appoint a commission, or provide for the levee board, or the board of supervisors making such appointment to assess the lands. That has been done by the legislature in the 8th section, by directly apportioning the tax upon each acre of land according to its own estimate of the worth. If it may impose a specific tax on the acre, it may also declare a rate according to a value ascertained and determined by itself. Both are referred to its full power over the subject, unrestained by the constitutional pro-

vision. One mode promises as fair a distribution of the burden as the other. Indeed, the law of 1871 promises a more exact equality than its predecessors. The taxes used to be collected by a collector appointed by the board, under the 11th section of the act. The law itself makes the assessment, declares the apportionment, and nothing remains to be done but to collect the money.

The process is somewhat like that practiced by the boards of supervisors. They, within certain limits, impose a rate upon the state taxes, which requires no further assessment, and when that is done, the order of the board is all the apportionment necessary, and nothing remains to be done except to make collections.

If the complaint be well founded, that the rate of assessment is too high, and that too much power, without proper restrictions and guards, is conferred upon the " board" of commissioners to create debt, by borrowing money and issuing bonds (which may be to the extent of a million of dollars), the only place to which tax-payers can go for relief is the legislature. The judicial department can not declare a statute to be inoperative and void because it may be hard and oppressive. If experience has shown that wasture, extravagance and improvidence have characterized the management of these " boards," entailing heavy debt upon the Delta region, that representation, if well-founded, made to another department of government, might bring about a reformation of the system ; here it is unavailing.

We are of opinion that the statute, in the particulars alleged, does not conflict with the constitution. It was error, therefore, to overrule the defendants' demurrer to the declaration.

The judgment of the circuit court will be reversed, and judgment here sustaining the demurrer, and dismissing the plaintiff's suit.