| 9 | 443 |
| 9 | 525 |

## THE LEE–CLARK–ANDREESEN HARDWARE COMPANY v. YANKEE.

1. EVIDENCE.
The action being on an alleged verbal promise of the defendant to assume the debts of a firm, which assumption was denied by the defendant, it was not improper to admit proof of any circumstances throwing light on the question and assisting the jury in determining which of the parties told the truth.

2. SAME.
A witness who is a party to the action has a right to explain why he made a remark testified to by witnesses of the other party and what he meant by it.

3. SAME—CROSS-EXAMINATION.
It is not error to refuse to permit the plaintiff, on cross-examination of the defendant while on the witness stand, to inquire why he did not answer a letter concerning which there was no testimony in the examination in chief.

4. SAME.
Statements made in a conversation between third persons are not admissible in evidence against a party who was not present.

5. SAME—IMPEACHMENT OF WITNESSES—PRACTICE.
Trial in Denver. Plaintiff introduced the depositions of two witnesses, residents of Salt Lake City, Utah. Defendant introduced evidence impeaching their veracity. Plaintiff had no notice that such impeaching testimony would be introduced, but made no attempt to avail himself of such relief as he might have been entitled until after verdict, by motion for new trial. *Held*, too late to be available.

*Appeal from the District Court of Arapahoe County.*

Mr. JOHN HIPP and Mr. OSCAR REUTER, for appellant.

Mr. CHARLES J. HUGHES, JR., and Mr. TYSON S. DINES, for appellee.

WILSON, J., delivered the opinion of the court.

Appellant was the plaintiff in this suit. In May, 1890, W. J. King and E. S. Yankee, a son of appellee, formed a

copartnership for the purpose of carrying on the hardware business in the city of Salt Lake under the firm name of King & Yankee. The capital stock was $10,000, all of which was furnished by appellee by a loan of $5,000 to each of the partners. During the course of the business the firm became indebted, among others, to the plaintiff, and also to the appellee in the additional sum of about $1,500. In November, 1891, King retired from the firm. The business was continued for some time under the same firm name, when it was entirely discontinued, leaving a number of debts of the firm unpaid. King claims that he transferred his interest in the business to appellee in consideration of his agreement and promise to assume and pay the indebtedness of the firm. Appellee denies this *in toto*, and claims that the only interest which he ever had in the firm was as a creditor and that which he felt in the success of his son. Plaintiff, a creditor of the firm, instituted suit to recover from the appellee the amount of the firm debt to it, relying upon the promise alleged to have been made by defendant to King. On the trial of the case much testimony was introduced, and it was very conflicting and contradictory. The alleged promise by defendant to King was not in writing, and there were no witnesses claimed to be present when it was made. Upon the trial the verdict was in favor of defendant, and judgment was rendered accordingly.

There are six assignments of error, all, save one, being to the action of the court in admitting improper, or refusing to admit proper, testimony. The first error assigned is that the court permitted the defendant to testify that he loaned King $5,000 with which to go into the business, and that the same was then unpaid. The gist of the action being the alleged verbal promise of defendant to assume the debts of the firm, and that being denied by defendant, the testimony extended over a wide range. This was, it seems to us, necessarily so from the very nature of the case, and it was not improper to admit proof of any circumstances which would throw any light whatever upon the question and assist the jury in deter-

mining which of the two parties told the truth.   Viewed in
this light, this was a circumstance which, although not
directly connected with nor material to the point at issue,
might have some weight when considered in connection with
other circumstances, and was not improper to be shown.
The trial seems to have involved an inquiry into defendant's
entire connection with the firm, and his loan to start the
business was a part of it.

Appellant complains that defendant, whilst testifying as
witness in the cause, was permitted to explain why he had
said to one of plaintiff's witnesses, in speaking of the firm,
"There will be no more money squandered."   The fact of
this remark being made was first brought out by plaintiff in
examination of one of its witnesses, and it should not com-
plain that the court permitted the witness to explain why he
made the remark and what he meant by it.   In any event,
we can conceive of no possibility by which the plaintiff was
injured or prejudiced by this testimony, especially in view of
the answer, in which defendant attempted no explanation of
how the money was squandered.

We do not think that the court erred in refusing to per-
mit plaintiff, in its cross-examination of the defendant while
on the witness stand, to interrogate him as to why he did not
reply to a letter from one J. W. Judd, who testified as a wit-
ness on behalf of plaintiff, and who appears to have been an
attorney for plaintiff,—it being alleged that Judd had stated
in this letter that he (defendant) had agreed to assume the
debts of the firm.   We think that the contention of defend-
ant is correct in regard to this ruling of the court.   It was
not proper cross-examination, there being no testimony brought
out in the examination in chief as to any such letter, or as
to anything bearing even remotely upon it.   Moreover, this
was not material nor relevant.   The fact the defendant had
received such a letter from Mr. Judd, and failed to reply to
it, could not have bound defendant in any manner.   Judd
was not a party to this suit, and not even a creditor of the

firm ; and hence the reasons of defendant for such failure to reply were even less material.

The fourth error assigned is to the action of the court in striking out the answer to the second direct interrogatory in the deposition of J. W. Judd. This answer detailed a conversation between the witness and E. S. Yankee as to the business of the firm. Defendant was not present at this conversation, and therefore could not have been bound or affected by any statements that were made. The answer was properly stricken out.

The sixth and last assignment of error presents a more serious question. Two of the principal witnesses on behalf of plaintiff were residents of Salt Lake City, and their testimony was taken by deposition. During the trial an attempt was made to impeach them, and two witnesses on the part of defendant, who were also residents of the same city, but who appeared in person, testified that the general reputation of each of them for truth and veracity in the neighborhood where he lived was bad. Defendant moved to set aside the verdict and for a new trial, alleging surprise on this account which ordinary prudence could not have guarded against, and in support thereof presented the affidavits of a number of reputable citizens of Salt Lake to the effect that the general reputation of the witnesses sought to be impeached was good. The motion was denied. Counsel for plaintiff insist with much force and reason that the circumstances of this case were such as to sustain a plea of genuine surprise, and that the motion should have been granted.

The trial was had in the city of Denver, although the controversy was founded upon facts and occurrences which took place in Salt Lake City, in another state, and distant eight hundred miles. It is further urged that the witnesses were not present at the trial, having testified by depositions taken sometime previously, and that, neither at this time, nor at any time prior to the moment of the introduction of the testimony complained of, was any intimation ever given that their credibility would be questioned or attacked ; that the

plaintiff was a resident of Omaha, and that neither it nor its attorneys, who resided at Denver, were presumably acquainted with the witnesses so as to ascertain, at a moment's notice, whether or not the testimony as to the character of the witnesses could be refuted, and it would then have been impossible to secure the attendance at this trial of such witnesses. This argument is a strong one, and the facts present a condition of affairs which should appeal most forcibly to the discretion of a trial court. It is true, as a general rule, that parties to a suit are presumed to know the law as applicable to their respective rights and privileges, including the legal manner and method of proof thereof, and also to. be prepared to meet any contingency which may properly arise at the trial. It is also true that either party has a right to introduce testimony of witnesses impeaching the character for truth and veracity of his adversary's witnesses, and that no statute nor rule of practice requires him to give to the other party previous notice thereof. Yet it is equally a fact that all witnesses are presumed to be truthful until the contrary is shown, and in the absence of any intimation, suggestion or circumstance to indicate that an attempt may be made at a trial to impeach the character of his witnesses, a party may, to some extent at least, rely upon this presumption.

The issues of fact involved in the suit are disclosed in the pleadings. The right to offer impeaching testimony is a legal privilege, which may or may not be, and in fact is seldom, exercised, and the intention of neither party in respect to it is so disclosed. It would be unreasonable to require the parties to always come prepared with a host of witnesses to prove the facts of his case, and also with an additional host to uphold their character for truth and veracity. Such a rule would entail upon litigants a burdensome expense that would amount in some cases to a denial of justice, and that would tend in all to bring into disrepute both the courts and the law. It would be in a last degree inconvenient and mischievous. *Wilson v. Clark*, 27 Miss. 270.

Before, however, a party in a case of this character can

be permitted a new trial, there is a duty devolving upon him which it must first appear that he has properly performed. It must be shown that immediately when the cause of surprise arose, he made objection, or called the matter to the attention of the trial court, and promptly sought to avail himself of some legal relief to which he might be entitled. It is not sufficient that he held the fact of this surprise as a secret in his own bosom, and make no manifestation of it until after the verdict is rendered, and he discover that it is against him. If the rule were otherwise, it would result in giving an unfair advantage to the surprised party. It would be difficult to bring about the final determination of a cause if this mode of practice were permitted to shrewd and able counsel. This view of the question is sustained not only by all of the authorities to which our attention has been called, but by all with which we are familiar. *Shipp v. Suggett*, 9 B. Mon. 5; *Bragg v. City of Moberly*, 17 Mo. App. 221; *Davidson v. Wheeler*, 17 R. I. 436; *Dueber Watch Case Mfg. Co. v. Lapp*, 35 Ill. App. 374; *Hoskins v. Hight*, 95 Ala. 284.

In this case plaintiff did not, at the time of the introduction of the testimony complained of, nor at any time until after verdict, so far as appears from the record, take any exception or make any objection to it, or offer any remonstrance against it, or manifest any surprise by word or act. If surprised, and the evidence were deemed material, the court might, upon application by plaintiff, have granted a temporary postponement of further proceedings until the plaintiff could prepare to properly meet this unexpected testimony, or it might have allowed a continuance, or plaintiff might have taken a nonsuit. Plaintiff allowed the trial to proceed, however, without seeking any relief from its alleged embarrassment, and did not make its surprise known to the court until after it had taken the chance of a verdict in its favor and failed. The plaintiff waived its surprise by its own neglect, failure or refusal to invoke its proper remedy, and this court will not undertake to interfere with the discretion

of the trial court in refusing to grant a new trial in such case. The motion therefor was properly denied.

The judgment will be affirmed.

*Affirmed.*