THE SOUTHERN RAILROAD COMPANY *v.* THE MAYOR AND ALDERMEN OF THE CITY OF JACKSON.

1. RAILROADS: ACT OF 1854, EXEMPTING THEM FROM TAXATION, CONSTRUED.— By the 15th section of the Act of 27th February, 1854, incorporating the Southwestern Air Line Extension Railroad Company (see Session Laws, ch. 354, p. 516), it is enacted: " That the fixtures and property of said company shall be exempt from taxation, for and during the full period of twenty years from the passage of this act; and that the privileges and benefits of this provision shall be extended to all railroad charters heretofore granted by the legislature of this State, as well as those hereafter to be granted, unless specially excepted; and the same shall be a part of said charters." This provision exempts all the property of railroad companies from municipal as well as State and county taxation.

2. SAME: SAME.—The exemption from taxation granted to railroad companies

by the 15th section of the Act of the 27th February, 1854, is secured to companies then chartered, for the period of twenty years from the passage of that act ; and companies thereafter chartered, will be entitled to such exemption for twenty years from the date of their respective charters.

3. STATUTES: REPEAL BY IMPLICATION : CONSTRUCTION.—It is true that the repeal of statutes by implication is not favored; but when a subsequent statute contains nothing restricting the general terms used in it, effect must be given to such terms according to their plain meaning; and if, when so construed, the statute is repugnant to a former statute, the latter is repealed to the extent of such repugnancy.

4. SAME : SAME : CASE IN JUDGMENT.—A subsequent statute exempting, in general tems, a certain class of property from taxation, will operate as a restriction upon a power previously granted to a municipal corporation, to levy taxes on all property within its limits.

APPEAL from the Chancery Court of Hinds county.   Hon. John Watts, chancellor.

*W. Yerger*, for appellants.

*W. P. Harris*, for appellee.

HANDY, J., delivered the opinion of the court.

The appellant filed this bill to enjoin the collection of a sum of money assessed by the appellees for taxes on a certain lot and buildings belonging to the appellant, and used as a depot in the city of Jackson by the appellant.

The bill states in substance, that on the 26th December, 1856, an act of the legislature was passed authorizing the Vicksburg and Jackson Railroad Company to sell to the appellant all the assets and property of the former company, and authorizing the appellant to enforce any legal rights of the former company ; and in accordance with that act, that the said company sold to the appellant all its property of every description, including that in the city of Jackson, upon which the aforesaid taxes were assessed, being the lots on which the depot of the Vicksburg and Jackson Railroad Company was situated, and which were used solely for that purpose, both by that company before the sale, and by the appellant since the sale.   The bill claims that this property is exempt from taxation by the city of Jackson, in virtue of the 15th section of the Act

of 27th February, 1854, incorporating " The Southwestern Air Line Extension Railroad Company," which enacts "that the stock, fixtures, and property of said company, shall be exempt from taxation for and during the full period of twenty years from the passage of this act ; and that the privileges and benefits of this provision shall be extended to all railroad charters heretofore granted by the legislature of this State, as well as those hereafter to be granted, unless specially excepted, and the same shall be a part of the said charters," Acts 1854, ch. 354, p. 516 ; that the Vicksburg and Jackson Railroad Company was chartered by the State of Mississippi prior to the passage of this act, and was included in its provisions, and that on the 30th December, 1854, the 15th section of said act was accepted by that company by resolution adopted by its board of directors, who forwarded a copy thereof to the secretary of state; whereby said 15th section became a part of the charter of that company.

The answer of the appellees relies upon several grounds of defence.

1. That the 15th section of the Act of 1854 has no reference or application to the Vicksburg and Jackson Railroad, which had been completed and in operation for more than fourteen years at the date of the act.  2. That the charters of these companies contain no provision exempting their property in the corporate limits of the city of Jackson from corporation taxes, although their charters were in existence in the year 1840, at which time the legislature incorporated the city of Jackson, and vested its corporate authorities with full power to levy a tax in each year to a specified limit on the lots of ground and tenements within its limits, which remains in force ; and that in virtue of this power, the authorities have contracted debts for public improvements in the city, at the date of the Act of 1854, on the faith of the power of taxation contained in their charter.  They insist that the tax here complained of, was rightfully assessed under the powers contained in their charter, and that the power of taxation thereby conferred was not intended to be taken away by the Act of 1854.

Upon the hearing, the injunction was dissolved, and the bill dismissed.

In support of this decree, several positions have been taken by the counsel for the appellees.

1. It is admitted that it was within the power of the legislature to alter or modify the power of taxation granted to the appellees, they being a municipal corporation. But it is insisted, that the Act of 1854, Section 15, cannot be construed to be a repeal or modification of the power of taxation granted to the appellees by the act of incorporation; because there are no express words in the Act of 1854 revoking the grant, and that act may have full operation without interfering with the power conferred in the charter; that the act is to be construed as having reference to the general revenue laws of the State, and not to the rights of municipal corporations expressly granted in their charters.

The language of the Act of 1854 is, "that the stock, fixtures, and property of said company shall be *exempt from taxation*," &c. This is very broad and comprehensive; and there is nothing in the act from which it could be properly inferred that the language was used otherwise than in the general sense which it imports. The right of exemption is general and unqualified, without any expression indicating that it was not intended to extend to all matters of taxation over which the legislature had. power. There is no more reason for saying that the taxes, which cities and towns were authorized by pre-existing charters to impose for municipal purposes, were not intended to be embraced, than that taxes for county purposes imposed by the board of police, were not embraced. For the counties had the same right to impose taxes, and there was as great a necessity for collecting them for county purposes, as existed in the case of a city corporation. And the general words of exemption here employed are equally applicable to both.

It is true, that repeals of statutes by implication, are not favored, and that general words, in a subsequent statute, will not be construed to divest a right clearly granted by a prior statute, if the words, without a violation of the purview of the statute, are susceptible of another construction consistent with the right. But when the statute contains nothing restricting the general words, effect must be given to them according to their plain meaning; and if they are in terms repugnant to the prior statute, the general rule must apply, *leges posteriores, priores contrarias abrogant.* Here there is not only

an absence of any words limiting the extent of the exemption, but no circumstance is shown to justify such a construction, except the mere fact, that the right of taxation had been previously granted to the appellees. But this fact may, with equal reason, be regarded as showing that the exemption was intended to embrace the appellees, especially if, as is mostly the case, such corporation taxes were heavy in comparison with other taxes. For it was clearly the object of the legislature to relieve railroad companies from the burden of taxes; and that object would have been but poorly accomplished, if the statute intended to leave them subject to all the taxes of the various cities and towns into or through which their roads might pass, and in which their property might be held.

But, however this may be, the words of exemption are sufficiently broad to embrace the right granted to the appellees in their charter; and there being nothing in the act, nor in the circumstances of the legislation, to limit their force, or render them inapplicable to the appellees, the general rule must prevail, and the property held to be exempt from the claim of the appellees.

2. The next ground taken in support of the tax is, that the act cannot be held applicable to railroads completed and in operation at the date of its passage; and that the exemption for twenty years, given by it, was intended to commence at the date of the charters of railroad companies existing at the date of the act. Hence, that the Vicksburg and Jackson Railroad Company were not entitled to the exemption.

We do not consider this view sustained by the phraseology of the statute.

The first provision in it is, that the company thereby incorporated should be entitled to the exemption for twenty years from the passage of the act. Then follows the provision, that the same "benefits and privileges shall be extended to all railroad charters heretofore granted by the legislature of this State, as well as those hereafter to be granted, unless specially excepted, and the same shall be a part of their charters."

It appears to have been the intention to extend the same benefit to all railroad companies in the State. As to those which might thereafter be chartered, it would necessarily take effect from the passage of the acts of incorporation. But as to those already in

existence, when was the privilege to commence, and how long is it to continue ? By the terms of the act, it is conferred upon all, *unless specially excepted ;* and *the same privilege* conferred by the act upon the company thereby chartered, was conferred upon those then in existence; and that was a privilege of exemption from taxation for twenty years. It was a privilege, then, granted and to be enjoyed for twenty years, in like manner as the company to which it was specially granted was to enjoy it. Both the language and the spirit of the act, show that the privilege was intended to be extended to such companies, for twenty years from the date of its passage. For, otherwise, violence is done to the provision, that it shall extend to all companies, " *unless specially excepted ;*" and, although not specially excepted, as was required by the terms of the act, to exclude them from its benefits, they are excluded from the benefits manifestly intended for all the railroads in the State, by the fact that their charters were more than twenty years old !

This view of the statute is still more clear from the concluding words of the section, that " the same," that is, the privilege granted, " shall be a part of their charters." From what time ? Certainly, from the passage of the act; for there is nothing, either in the reason or language of the act, showing that it was to become a part of their charters at any other time.

The Jackson and Vicksburg Railroad Company being chartered by the legislature at the time of the passage of the act, and not being " specially excepted" from its benefits, must be considered to be embraced in its provisions; and hence, the privilege conferred must have become a part of its charter from the date of the passage of the act, upon the company accepting it as a part of their charter. For otherwise the provisions of the statute are senseless, and the privilege conferred nugatory.

3. It is further contended, that at all events, the privilege was conferred upon the Vicksburg and Jackson Company for their sole benefit, and though it might have been enjoyed by that company, it cannot be by their assignee, the appellant.

But the assignment by the former to the latter company was made in accordance with an act of the legislature. Upon that assignment, all the property of the former company was vested in the Southern Railroad Company, who became thereby entitled to

hold and use the same, for all the purposes of her charter, as if the property had belonged to her under her original charter. She held it for the purposes of her railroad, and as a part of it ; and it is clear that the privilege conferred by the statute extended not only to property held by the railroad at the time of its passage, but to such as might be subsequently acquired within the period limited, for the purposes of the railroad, whether acquired by purchase from another railroad in a legal and valid manner, or by other modes. It was still property of the railroad company, to whom it was assigned, for the purposes of her charter ; and, therefore, entitled to the privilege conferred by the statute.

Upon these views of the subject, the decree must be reversed, and the injunction made perpetual ; which is ordered accordingly.