WIRT ADAMS, STATE REVENUE AGENT, *v.* MISSISSIPPI STATE BANK.

1. TAXATION.  *Uniformity and equality.*  *Constitution* 1890, *sec.* 112.  *Municipal taxes.*

   Municipal taxation is within the operation of the constitution of 1890, sec. 112, providing that taxation shall be uniform and equal throughout the state, and that property shall be taxed in proportion to its value.

2. SAME.  *Laws* 1894, *ch.* 29, *p.* 25. *sec.* 3.  *Constitution* 1890, *sec.* 112.

   The concluding clause of sec. 3, ch. 29, p. 25, laws 1894, providing that no city or town shall impose or collect a greater tax on banks or solvent credits than the state tax for the same year, is unconstitutional; it violates sec. 112, constitution of 1890.

3. DE FACTO OFFICERS.

   An officer *de facto* is one who exercises the powers and discharges the functions of an office, being then in possession of the same under color of authority, but without actual right thereto.

4. SAME.  *Special judge.*

   If a special judge of the supreme court be regularly appointed, enter upon the discharge of his duty, hear argument in the cause and duly consult thereon with his associates, before the expiration of the term of the regular judge in whose place he was appointed, a judgment rendered by such special judge, without objection from the litigants, is valid, although the term of office of the regular judge expired before its rendition.

FROM the circuit court of Madison county.

HON. ROBERT POWELL, Judge.

This case involved alone the constitutional question passed upon by the court.  Its decision was urged by both parties, in the case of *Adams* v. *Capital State Bank*, 74 Miss., 307; but

the court then declined to decide it. The court deciding
the present case was composed of Woods, chief justice; Hon.
Jeff. Truly and Hon. W. G. Orr, special judges, the latter two
being appointed to preside in place of Hon. T. R. Stockdale
and Hon. A. H. Whitfield, regular judges, who were disqual-
ified. The facts of the case on the merits are stated in the
opinion of the court, delivered by Truly, special judge; and
the facts involved on the motion are stated in the opinion
thereon, delivered by Woods, C. J.

*Mayes & Harris*, for appellant.

Notwithstanding the power of the legislature to grant exemp-
tions, yet, when it shall have designated property as subject to
*ad valorem* taxation, the taxation imposed must be equal in its
burden, and uniform in its character, and in proportion to
value, and if it lacks any one of these three elements, it is un-
constitutional. We admit that there are certain peculiar spe-
cies of property which are of such exceptional and extraordi-
nary nature as to justify a provision by the legislature for a
special and exceptional mode of assessment, as in the case of
railroad and telegraph property, and, according to some author-
ities, bank property. But the principle goes no further. When
the peculiar nature of the property has led to a peculiar mode
of valuation, and that mode so contrived has wrought its perfect
work of ascertaining the true value of the property for taxation,
the limit of the exception is reached, and, if the legislature under-
takes to impose another and different burden in the rate, it is un-
constitutional as being neither uniform nor equal nor in propor-
tion to value. That is precisely the trouble with the statute under
consideration. The assessment by which the value of the bank
property, for purposes of taxation, has been ascertained is one
thing. That value is ascertained by assessment. For the leg-
islature to add, based on that assessment, a different rate, or
limit of rate, is to violate the constitution on all three of these
lines, for the reason that it fixes an arbitrary difference which

is purely mathematical.    It is impossible to say that a six mill
levy on property valued at one hundred dollars is equal with a
fourteen mill levy on other property valued at the same amount.
It is absurd to say that in such case there is uniformity.    The
whole scheme of taxation must rest for its justification, so far
as the variant forms of property are concerned, and the differ-
ent limits which go to make up their taxable liabilities, on the
assessment made.    The result of the ascertainment is the deter-
mination of a definite amount mathematically measured, and to
apply to that amount so measured two rates, also mathemat-
ically measured, in which one term is as to the other in the pro-
portion of one to three, or one to two, and to call the result
equal and uniform, is absurd.

The special and heinous feature of this statute is that the
favoritism shown to the banks, on the one hand, as against
citizens on the other, and shown to the comparatively wealthy
class of citizens who are money lenders, creditors, on the one
hand, as against the comparatively poor class of citizens, who
are borrowers and ordinary property holders, on the other,
is that it consists in the levy on the values ascertained, and not
in the method of the ascertainment.    In that method of ascer-
tainment there might be some play, and sometimes there is a
play, for legislative discretion, but in the levy there can be none.

Again, considering this statute from the point of view of tax-
ation in proportion to value—taxation in proportion to value
means that the whole of the taxation shall be in proportion to
value — it includes both the assessment and the levy.    The
assessment must be in proportion to value, and there, because
of peculiar conditions, the legislature may have some discretion,
but when that discretion is exercised, the rule is imperative that
the levy must be in proportion to the ascertained value as well.
Nothing else is justifiable morally.    A taxation in proportion
to value is not satisfied by the mere form of establishing that
the sum to be collected shall be a certain rate per cent. upon
the value assessed, but it means, and must mean, also that the

rate so levied shall be a rate itself proportionable to the value of the property on which the levy is made, as compared with other values subject to the same taxation. Any other construction is mere legal jugglery, and would turn the constitution from a thing of substance into one of shadow. The.books are full of expressions that absolute equality and uniformity of taxation cannot be achieved, owing to the variant conditions of human affairs. But those expressions are coupled always with the qualification, either expressly made or obviously implied, that equality and uniformity and proportion to value must be achieved so far as is reasonably practicable. It is impossible to say that a law which, in express terms, provides that the taxes collected shall not be equal, that they shall not be uniform, is an effort to make them equal and uniform. On the contrary, it is a plain, undeniable and inexcusable effort to defeat equality and uniformity in taxation.

Equality of taxation means apportioning the contributions of each person towards the expenses of government, so that he shall feel neither more nor less inconvenience from his share of the payment than every other person experiences. *Kirby* v. *Shaw*, 15 Pa. St., 258; Mills Pol. Ec., bk. 5, ch. 2., paragraph 2.

That taxation shall be uniform means that the cause shall be uniform. Each step must be uniform; the rate must be uniform. *New Orleans* v. *Davidson*, 30 La. Ann., 555; *Knowlton* v. *Supervisors*, 9 Wis., 510; *Weeks* v. *Milwaukee*, 10 Wis., 242. A tax on real estate only is not uniform. *Gillman* v. *Sheboygan*, 2 Black., 510; *Muscatine* v. *Railroad Co.*, 1 Dill., 536; *Winter* v. *City*, 65 Ala., 403; *Norris* v. *Waco*, 57 Texas, 635, 641.

The statute violates the *ad valorem* rule, because, in effect, it provides that the tax collected shall be without reference to value. It is a delusion and a disguise; it is an effort to dodge and give the old commuted privilege tax of 1888 by another process. *Johnston* v. *Macon*, 62 Ga., 645; *Atlantic R.*

*Co.* v. *Contract Co.*, 75 N. C., 474; *Cheshire* v. *Berkshire*, 118 Mass., 386.

It is contended that this provision in the constitution does not apply to municipal taxation, but only applies to state taxation. We deny the proposition.   We grant freely and frankly that the proposition is not without authority, but the overwhelming weight of authority is the other way, and not only that, but the more modern authorities, which more fully · express the view arrived at by constitutional lawyers, after a long period of investigation and study in the light of historical and political philosophy is otherwise.   So far as we have been able to discover, the states which have held that these provisions do not apply to municipal taxation, are Virginia, Arkansas and West Virginia.   The Arkansas cases are *Washington* v. *State*, 13 Ark., 752, and *McGehee* v. *Mayhis*, 21 Ark., 40. ·  Those cases, however, proceed distinctly on the fact that the Arkansas constitution gave a distinct and independent power of taxation direct to the counties, without any delegation from the legislature, wherefore it was concluded that the general equality and uniformity clause in another portion of the constitution did not refer to county taxes, for the reason that the constitution itself made a special provision in respect to county taxation. Virginia held that the equality and uniformity clause obviously could not have been intended to require that all of the municipalities in the state, and all of the different counties in the state, should levy the same rate of taxation, since it was not to be presumed that the constitutional convention would, in adopting so inconvenient a rule, know, as it must have known, that the necessities of the various municipalities and counties were different, from which reasoning they drew the conclusion that the constitutional provision was not intended to apply to municipalities or counties.   West Virginia simply followed Virginia.

The fallacy in that reasoning is manifest.   The decision reached by the courts in the case may have been right.   No one

contends that the meaning of the equality and uniformity clause is that each county shall levy the same rate with every other county, or that each town shall levy the same rate with every other town.　The true application of the clause to counties and municipalities is this: That taxation within a county for county purposes shall be equal and uniform, and taxation within a town for town purposes shall be equal and uniform, and that rule is the mandate of the constitution, and in that way the constitutional clause does apply.　Such is unquestionably the law. See. Cooley's Const. Lim. (ed. of 1890), p. 607, *et seq.; Howell* v. *Bristol*, 8 Bush (Ky.), 493; *Lexington* v. *McQuillan's Heirs*, 9 Dana, 513; *Exchnage Bank* v. *Hines*, 36 Ohio St., 1; *Bright* v. *McCulloh*, 27 Ind., 223. *East Portland* v. *Multnomoh Co.*, 6 Ore., 62, 66; *Taylor* v. *Chandler*, 9 Heis., 349; *Chattanooga* v. *Railroad Co.*, 7 Lea, 561; *New Orleans* v. *Kaufman*, 29 La. Ann., 283; *New Orleans* v. *Davidson*, 30 La. Ann., 554.

In addition to the foregoing authorities from other states, we call the attention of the court to the following in our own state: *Southern Railroad Co.* v. *Jackson*, 38 Miss., 334.　In this case the supreme court was construing the fifteenth section of the charter of the Southwestern Air Line Company, which provided that the ''fixtures and property of said company shall be exempt from taxation for and during the full period,'' etc.　The question arose as to whether the expression just quoted exempted such property from taxation by the city of Jackson, and it was held that it was so exempted, notwithstanding the presumptions against exemptions.　We cite this case in order to show the general principle that, on this specific subject of exemptions, it is not necessary for a statute to mention municipal taxation expressly, and the same rule would apply, we submit, to the constitutional restriction.　The presumption against the intent of the constitution to restrain the legislature is no stronger than that against the intent of the legislature to exempt from taxation.

*Daily* v. *Swope*, 47 Miss., 367, was the great case in which

the question of the constitutionality of the act of 1871, establishing the levee. board of district No. 1 was settled. It was a case of a special district for local purposes, and the supreme court went all over the ground of equal and uniform taxation.    It was argued for the plaintiff in error by L. Q. C. Lamar and Henry Craft, and, for the defendant in error, by A. H. Handy and H. H. Chalmers. Probably no more distinguished array of counsel ever stood before this court in one case, and we invite the attention of the court not only to the opinion of the court itself, but also to the briefs of counsel in the case.    Those briefs show what those able lawyers regarded as being the legal propositions in respect to these constitutional questions which had to be postulated in the cases, and as the basis from which their arguments should proceed.    For instance, Lamar and Craft say: "To render taxation uniform, it is only essential (1) that the objects of taxation should be within the limits of the taxing district; (2) that the apportionment of the burden should reach all the objects selected for taxation. . . '. The requirement of uniformity and equality, therefore, extends only to such objects of taxation as the legislature shall determine to be properly subject to the burden," etc.    See, also, the briefs of Handy and Chalmers along this line.

The supreme court decided, Justice Simrall delivering the opinion of the court, that the statute of 1871 was not unconstitutional, drawing a distinction in favor of local assessments for local improvements.    In that distinction the court clearly discriminated between such assessments, on the one hand, and general taxation on the other, and, under the head of general taxation, they expressly include state taxes, county taxes and municipal taxes.    They say: "We find that, going back to the earliest colonial times, and thence through the history of these states, that there have existed two distinct systems of taxation— one, the more general, referring to the impositions and assessments for the general, usual and ordinary purposes of the state,

the county and municipal bodies; the other, the more confined but special, imposed for the object of accomplishing some local improvement or amelioration," etc.   The learned judge quotes approvingly the Missouri decisions, to the effect that the *ad valorem* clauses apply to ordinary taxation, when the money so raised was to go into the state, county, city or town treasury, for the usual and general purposes.   The court points out that section 20 of the constitution of 1869, which is the same as section 112, under consideration, was not found in our constitutions of 1817 or 1832; that it was a literal transcript of the constitution of California.   The court says: "We must suppose, also, that the convention were conversant with the interpretation which had been put upon the similar provision in other state constitutions, and that they meant, also, to adopt, with the words, the judicial construction of them in the other states.   In *Burnett* v. *Mayor of Sacramento*, 12 Cal., 83, the same question as arises here was presented.   It was held that the section only applied to that charge or imposition upon property to raise funds to defray the expenses of the state government or of some county or town. . . .   The same question was thoroughly reconsidered in *Emory* v. *San Francisco Gas Co.*, 28 Cal., 348, and the doctrine of the previous case reaffirmed."   And thus we have our supreme court elaborately and fully announcing the true intent and meaning of our equality and uniformity clause, declaring that it was drawn from California, was adopted with the California construction, pointing out that the California construction in two cases included counties and cities, as well as the state within its operation.   The same statement, that the twentieth section of the twelfth article of the constitution of 1869—that is to say, this section—"only applies to and governs taxes levied for usual, ordinary and general purposes of the state, county and incorporated city or town," was repeated in *Vassar* v. *George*, 47 Miss., 713.   When, therefore, the constitutional convention of 1890 adopted section 112, they adopted it with an interpretation already placed upon

it in this particular, not only by California, whence it came, but also by our own supreme court in construing and applying it in two different cases. That convention readopted it literally, and the conclusion is irresistible that they adopted it with the constructions placed upon it, and in adopting it without alteration or change or modification in the particular under consideration, they intended it to mean exactly what our courts had previously declared that it did mean—that is to say, that its rule should apply, or applied, to taxes imposed by counties and towns within the limits of such counties and towns, and this consideration, already clear and indisputable under well-settled canons of statutory and constitutional construction, is made even clearer and stronger when the court remembers that the distinguished jurist, Judge Simrall, who delivered the opinion cited above, was himself a member of the constitutional convention which adopted section 112. It is argued here, since it was so argued in the court below, that section 112 does not prohibit the legislature from selecting the subjects for taxation, or from classifying the subjects so selected. It is not our contention that section 112 prevents the legislature from exempting property from taxation. But that power is not, and should not be, an arbitrary power, but must be based upon reason and justice, and the courts have not hesitated to hold classifications made by the legislature void which do not appear to be based on reason and justice. *People's Loan, etc., Co.* v. *Keith*, 153 Ill., 609, 617; *Loan Assn.* v. *Commissioners*, 115 N. C., 410; *Copeland* v. *St. Louis*, 127 Mo., 417, 427; *Shotwell* v. *Dalrymple*, 49 N. J. L., 530. (See this case for a good description of a "class.") Also see *Cox* v. *Truitt*, 57 N. J. L., 535; *Standard Life Co.* v. *Assessors*, 95 Mich., 466. The classification pretended to be made here is justifiable by no reason, and it is purely arbitrary. It is a pure and inexcusable discrimination in favor of the capitalist against the poor man. The Worrell case was one in which the point in controversy was not the constitutionality of the *ad valorem* tax,

but the constitutionality of a privilege tax under the act of 1888, and what the supreme court, in its decision, was holding was simply the matter before the court, and that was as to privilege taxation, the subjects of such taxation might be classified, of course, at the discretion of the legislature.

We cite, in conclusion, the following authorities, all of which bear us out in our contention: Cooley's Const. Lim., 607; Ib., 617–623; Mayor of Mobile v. Stonewall Ins. Co., 53 Ala., 570; State v. Railroad Co., 75 Mo., 211; Brewer Brick Co. v. Brewer, 62 Me., 62; State v. Express Co., 60 N. H., 219; Railway Co. v. Champlin, 37 Kan., 682; Exchange Bank v. Hines, 3 Ohio St., 1; Knowlton v. Supervisors, 9 Wis., 410; Verdrey v. Summerville, 82 Ga., 138; Daly v. Morgan, 69 Md., 468; Pine Grove v. Talcott, 19 Wall., 675.

*Brame & Alexander*, for appellee.

Section 20, art. 12, constitution 1869, is as follows: "Taxation shall be uniform and equal throughout the state. All property shall be taxed in proportion to its value, to be ascertained as directed by law." This appears as section 112 of the constitution of 1890, which is as follows: "Taxation shall be uniform and equal throughout the state. Property shall be taxed in proportion to its value," etc. It will be seen that the provision as to uniformity and equality is precisely the same in the two constitutions. Under the constitution of 1869, notwithstanding this uniformity clause, and without any express provision authorizing it, but by virtue of its sovereign power, it was uniformly held that the legislature could select subjects of taxation and exempt others. "The subjects of taxation may be classified at the discretion of the legislature, and if all of the same class are taxed alike, there is no violation of the equality and uniformity required by the constitution." *Vicksburg Bank* v. *Worrell*, 67 Miss., 47; *Railroad Co.* v. *Lambert*, 70 *Ib.*, 779. The same principle is declared in *Daily* v. *Swope*, 47 Miss., 386; *Mississippi Mills* v. *Cook*, 56 *Ib.*, 56; *Express*

*Co.* v. *Siebert*, 142 U. S., 351. This was held under the constitution of 1869, without any express provision authorizing the legislature to select the subjects of taxation. But under the constitution of 1890, there is an express provision authorizing it. Section 90 thereof, by declaring that the legislature shall not pass local, private or special laws exempting property from taxation or from levy or sale, but that this shall be provided for only by general laws, is an express authorization of such exemption if granted by a general law.

In the case of *Vicksburg Bank* v. *Worrell*, 67 Miss., 47, the question of the power of the legislature to select the subjects of taxation was elaborately argued on the authorities, and most carefully considered by this court. The very same objections which are urged here, of class legislation, were presented to this court in that case without avail. It is no answer to the decision in that case to say that it was based upon the constitution of 1869, because, as we have seen, the equality and uniformity clause in that constitution was precisely the same as in the present constitution. And, furthermore, it was decided on general principles, without any express constitutional authority, that the legislature could select the subjects of taxation and thereby exempt certain property; whereas, under the present constitution, there is affirmative authority for the legislature to exempt any kind of property, provided only it is done by general laws, and the act of 1894 is certainly such a law. It would have been a most ruinous and unwise policy to have restricted the legislature in this regard, and it was never contemplated by any member of the constitutional convention of 1890 that this should be done. It is a wise and beneficent exercise of power to exempt certain property from taxation. It might be extremely beneficial to the state, or to counties or cities, to exempt certain property during a certain period, while taxing it afterwards. There were many good reasons which actuated the legislature to pass the statute under consideration. The holders of bank shares or solvent credits may not live in the munic-

ipality.  In many instances they live in the country, remote
from the municipality, and in such case there would be a good
reason for restricting the rate of municipal taxation.

The identical question under consideration was decided by this
court in the case of *Winona* v. *Bank*, 69 Miss., 663, in which it
was held that the revenue act of 1890, which provides that
" cities and towns are prohibited from collecting or levying any
other tax on banks or solvent credits, owned by individuals or
corporations, greater than 75 per cent. of the state tax," was
valid.  That case was decided in 1892 in respect to the taxes of
1891, therefore after the constitution of 1890 went into effect,
and it was held that the town of Winona could not levy a tax
greater than 75 per cent. of the state tax.  It is impossible for
counsel to get around that decision.

The argument of opposite counsel might properly be styled
an effort to secure a rehearing in the case of *Bank* v. *Worrell*,
and other cases above cited.  Counsel qualifiedly admit the
power of the legislature to exempt property from taxation, but
say that the exemption must be "just and reasonable."  This
is a very novel proposition.  Who is to judge as to this?  If
the power to exempt exists, of course the propriety of the exer-
cise of this power is a legislative, and not a judicial, question.
While counsel disclaim all purpose of making a stump speech
argument on the subject of taxing the poor and exempting the
rich, yet they make just such an argument, and make appeal to
prejudice by denouncing the policy of the statute, the effect of
which, they say, is to show favoritism to money lenders and
others fortunate enough to own bank shares and good debts.
In the argument of a grave constitutional question, is it neces-
sary for us to answer such an appeal as this?  An appeal of
the very same nature could be made in a case involving the
validity of § 3744, code of 1892, as to the total exemption of
property therein designated.  Among other things in the long
list it exempts the " wearing apparel of every person."  Would
counsel argue the injustice and inequity of this as protecting

the purple and fine linen of the rich, while only exempting the scant raiment of the poor? Would counsel say that the statutory exemption of all colts foaled in this state under three years old is an outrage on the poor, in that it relieves from any and all taxes the rich man, who may own hundreds of colts? Counsel would be able to show the rankest injustice and oppression in the case of a rich planter holding exempt thousands of bales of cotton, and all other "farm products," as compared with the poor citizen, who has no farm, no colts and no fine raiment.

*Calhoon & Green*, on same side.

The power to adjust property into classes in a general revenue law, and to tax some classes less than others, is quite a necessary legislative power. In some years it might be a power of the greatest importance to the state. It has been one freely exercised throughout the history of Mississippi. It will not be frittered away by the courts on arguments of remote implication. The constitution of 1869, art. 12, sec. 13, says: "The property of all corporations for pecuniary profit shall be subject to taxation the same as that of individuals," and in article 12, section 20, it says, "Taxation shall be equal and uniform throughout the state. All property shall be taxed in proportion to its value, to be ascertained by law." Constitution of 1869, art. 12, sec. 20, which is, for all purposes of the argument, the same as section 112 of present constitution. Now, in construing this clause of the constitution of 1869, this court said, in *Vicksburg Bank* v. *Worrell*, 67 Miss., on p. 47: "The legislature may select the subjects of taxation, and everything not designated as taxable is exempt for the time being. The subjects of taxation may be classified at the discretion of the leigslature, and, if all of the same class are taxed alike, there is no violation of the equality and uniformity required by the constitution." This principle is also clearly announced in *Mississippi Mills* v. *Cook*, 56 Miss., pp. 56 and 60; *Railroad Co.* v.

*Lambert*, 70 Miss., 779; *Daily* v. *Swope*, 47 Miss., 386.   So, beyond question, under the constitution of 1869, the act now under consideration would have been held valid, and it is equally plain that the power of taxation by classification is not at all impaired by the constitution of 1890.   Where is the clause which does it?   The legislature saw fit to discriminate in favor of solvent credits as a class, and did so.   Banks have always been taxed upon the value of their shares of stock, and the value of these shares is made up of its money and assets, and they are, in fact, solvent credits, and nothing else.

But for code, § 2926, municipalities could not tax at all. They are legislative creations, may be abolished at will, and can tax only under express grant of power, and cannot complain of a statute regulating their powers.   The power of the legislature over a municipality in its governmental capacity is absolute.  1 Dillon on Munic. Corp., secs. 62–66; and, as to taxation, *Ex parte Ferguson*, 59 Miss., 13; *Vicksburg* v. *Ins. Co.*, 72 Miss., 70.   The legislature simply says that cities and towns shall not tax banks—meaning bank shares or solvent credits—more than the state tax.   Then, by what authority can they be taxed more?   The legislature may exempt property from municipal taxes without the consent of the municipality.   *Richmons* v. *Richmond*, 21 Gratt., 604; *Brennan* v. *Ins. Co.*, 70 Miss., 531.

In the case at bar the matter involved pertains to the municipal governmental capacity.   The legislature imposed a restriction upon its power of taxation, and, if as shown, there is power to prohibit or restrain at will, it is difficult to perceive what right of the municipality is thereby infringed.   There is no guarantee to municipalities in the constitution whatever that the legislature shall be restrained in its delegation of the taxing power.   To enable a party to insist upon the unconstitutionality of a law, on the ground that it affects or impairs a right secured by the constitution, the party must first show that he had the

right.    No one but the party (or a person claiming under him) whose right is affected by the legislation can plead its unconstitutionality.    *Dejarnett* v. *Haynes*, 23 Miss., 603; *Barings* v. *Davis*, 19 Wall., 1.

The statute is assumed to be valid until some one complains whose right it invades.    *Prima facie*, and upon the face of the act itself, nothing will appear to show that it is not valid, and it is only when some person attempts to resist its operation, and calls in the aid of the judicial power to pronounce it void as to him, his property or rights, that the objection of unconstitutionality can be presented and sustained.    Respect for the legislature, therefore, concurs with well-established principles of law, and it follows, as a necessary legal inference from this position, that this ground can be taken advantage of by those only who have the right to question the validity of the act, and not by a stranger.    To this extent only is it necessary to go, in order to secure and protect the rights of all persons against the unwarranted 'exercise of legislative powers, and to this extent only are courts of justice called in to interpose.    Nor can a court declare a statute unconstitutional and void solely upon the ground of unjust provisions.    Cooley on Const. Lim., 197, 198.    Municipalities have no inherent power, but only such as are given them by the legislature.    *Ib.*, 229.    And they are under complete legislative control.    *Ib.*, 229–232, 282.

It seems to follow that the municipality cannot, nor can the revenue agent for it, set up the unconstitutionality of an act restricting its right of taxation.    The position that the general assessment by the legislature is valid, but that the exception as' to banks and solvent credits is void, cannot be tenable, because the exception is a prohibition against taxation.    It is difficult to conceive, under the authorities we have cited, how the prohibition can be void.    But, aside from this, the power of the legislature to classify property for taxation, inside or outside of municipalities, is too well settled by decisions, before and since

the constitution of 1890, and too well grounded in necessity and common sense, to be disturbed upon arguments of remote implication. This power has no reference whatever to the clauses of exemption, and simply requires uniformity in the taxation of the particular class of property taxed.

Are municipalities embraced by the constitution? The "legislature has the right to exempt property from taxation by counties and cities, towns and villages." *Brennan* v. *Ins. Co.*, 70 Miss., 534, 535. The reason is that the sections of the constitution referred to, apply only to state revenue, and municipalities are not mentioned. This omission of municipalities is quite significant, when we discover that counties are expressly referred to in section 112. It would seem plain that the constitutional provisions on which appellant is planted refer only to state taxation, or for state revenue, and do not at all affect municipalities. *Daily* v. *Swope*, 47 Miss., 381, 383, 384; *Louisiana* v. *Pillsbury*, 105 U. S., 278. While this appears manifest, it need only be doubtful to affirm this case. In the case of *Brennan* v. *Ins. Co.*, 70 Miss., 534, 535, the precise question here was taken for granted as contended for by us.

Section 112 empowers the legislature to provide a special mode of valuation and assessment of railroad and other corporate property, and any species of property not situated wholly in one county. The legislature is presumed to have known that the shares of banks are not held in one county, and, hence, as an assessment in Hinds might be made on shares held in Copiah, the act should be taken as a special mode of assessment of non-resident shareholders through the bank. Now, section 112 is silent as to the municipal taxation in such cases, and, as that section expressly provided for the county levy, it would seem to follow from this view that the municipal levy is left to the discretion of the legislature.

Argued orally by *Edward Mayes*, for appellant, and *S. S. Calhoon* and *L. Brame*, for appellee.

TRULY, Special J., delivered the opinion of the court.

This suit was brought by the state revenue agent, in the circuit court of Madison county, to recover certain balances of unpaid municipal taxes, claimed to be due by the Mississippi State Bank, for the years 1894 and 1895, to the city of Canton, in which said bank is located. The city of Canton levied an *ad valorem* tax of twelve mills for the year 1894, and of eleven mills for the year 1895, on all property subject to taxation. The bank paid six mills in 1894 and five mills in 1895, claiming immunity from further municipal taxation, under section 3, chapter 29, acts 1894. It will be observed that the amount paid by the bank in 1894 and 1895, was the amount of the state tax for the corresponding year. The provision of said section 3 relied on, declares that "no city or town shall impose or collect greater tax on banks or solvent credits than the state tax for the same year." This provision, it is urged by counsel for appellant, is obnoxious to and violative of several sections of the state constitution of 1890, viz., sections 90, 112, and 181, 182, but the views herein expressed, and the conclusions arrived at, render it unnecessary for us to announce our views upon any but the one section mainly relied upon, section 112.

The "uniformity and equality clause," commonly so called, forms sec. 20, art. 12, constitution 1869, and is in these words: "Taxation shall be equal and uniform throughout the state. Property shall be taxed in proportion to its value, to be ascertained as directed by law." Prior to the adoption of our present constitution (1890), this section had been the subject of repeated judicial investigation. In *Daily* v. *Swope*, 47 Miss., 367, it was held that the "equal and uniform taxation" required by the constitution did not refer to local assessments for purposes of local improvements, and, consequently, the power of the legislature to classify and arbitrarily value lands for purposes of local taxation within a levee district was upheld. See, also, *Vasser* v. *George*, 47 Miss., 713.

In *Mississippi Mills* v. *Cook*, 56 Miss., 40, the supreme court

went a step further, and announced that, under the law as it was then written (constitution 1869), it was not necessary that all property should be taxed, but that the legislature had the power and the right to select such objects of taxation as it might deem proper, and that property not so selected was not subject to taxation. It was also held that sec. 20, art. 12, constitution 1869, did not prevent the legislature from levying a privilege tax in lieu of all *ad valorem* taxes. *Vicksburg Bank* v. *Worrell*, 67 Miss., 47.

It is useless to burden this opinion with further citation of authorities, with which bench and bar are entirely familiar. Suffice it to say, that the conclusions reached in cases before referred to were uniformly followed, but the rules therein announced were never broadened or extended. This was the judicial interpretation placed upon the " equality and uniformity clause " of the constitution of 1869, and it was with the light of these decisions before it that the constitutional convention amended said clause, and adopted the corresponding section now in our constitution relating to the subject under consideration. Section 112, constitution 1890, omitting the words not material to this discussion, provides: " Taxation shall be uniform and equal throughout the state. Property shall be taxed in proportion to its value. Property shall be assessed for taxes, under general laws and by uniform rules, according to its true value." And the question now to be passed upon, is whether or not the statute assailed is violative of the provisions of that section.

At the very threshold of this investigation, we are met by the earnest contention of counsel for appellee, that section 112 does not refer to municipal taxation, but only to such taxation as may be imposed for the purpose of providing revenue for the administration of state and county affairs. Learned counsel support their argument by numerous citations from other states. We have given the subject the careful research which its gravity and importance demands, and are constrained to adhere to the de-

cisions of our supreme court. In *Daily* v. *Swope* it was held that the general system of taxation within the scope of sec. 20, art. 12, cons. 1869 (as distinguished from taxation for the purpose of local improvements), referred to the "impositions and assessments for the general, usual, and ordinary purposes of the state and the county and municipal bodies." And this doctrine was expressly reaffirmed and approved in *Vasser* v. *George*, where it was said: "The limitation upon the power in that section (sec. 20, art. 12) only applies and governs taxes levied for the usual, ordinary, and general purposes of the state, county, and incorporated city or town." We are forced to reject the contention of appellee, and are content to abide by these decisions. Clearly section 112 does apply to and govern municipal taxation. See, also, *Southern R. R. Co.* v. *Jackson*, 38 Miss., 334.

Counsel for appellee next contend, that this question has already been passed upon by the supreme court of this state. Not so. A critical analysis of every case cited will show that the exact point here decided was never involved. The case of *Winona* v. *Bank*, 69 Miss., 663, strongly relied on, has no application. The constitutionality of the law therein considered was never discussed by counsel or decided by the court, and therefore the decision is without weight as a precedent. The decision of the case not resting solely on the question of constitutionality of the statute, that point was very properly not passed upon. Cooley's Con. Lim., 163.

*Mississippi Mills* v. *Cook* merely announced that the legislature had the power and right to select the subjects of taxation, and property not so selected should not be taxed. But the opinion of at least two, if not all, of the judges in that case, if carefully examined, will show that they held, that where property was subjected to taxation, the tax should be equal and uniform upon all property so taxed. In truth, we are strengthened and confirmed in the views here announced by the opinion in that case. Says Chalmers, J.: "We all concur in holding

that the twentieth section does not require the taxation of all
the property in the state, but only that all that is taxed shall be
taxed uniformly, equally and according to value. These are
three rules, and the only rules laid down in reference to taxing
the property of individuals. What do they mean? The re-
quirement of uniformity means that all property belonging to
the same class shall be taxed alike—so that all horses shall be
taxed at the same rate, and all lands or stocks or merchandise.
There is to be no discrimination between property of the same
class, and it shall not be competent to levy one rate upon country
lands and another upon city lands, or one rate upon horses
of one breed and another upon horses of a different breed. If
the uniformity requirement stood alone, it would be competent
to affix different rates to different kinds of property, and so to
impose one rate upon all lands, and another upon all horses,
and still another upon all stocks, and still another upon all
merchandise. But this kind of discrimination is prohibited by
the requirement of equality, by which it is made obligatory that
the same rate shall be imposed on every kind and species of
property that is subject to taxation.''

It is true that this language is taken from a dissenting opin-
ion, but it seems to announce the unanimous conclusion of the
three judges upon the point here involved, and; besides, these
words came from the pen of one of the most distinguished jurists
that ever adorned the bench of this state. But, precedent and
authority aside, this statute will not stand the test when meas-
ured by the rules announced by section 112. The whole scheme
of taxation, as devised by that section, is plain, simple and easily
understood. In order to carry out that design three things are
necessary: (1) ''Property must be assessed for taxes under
general laws,'' because, without a legal assessment, no tax can
lawfully be imposed or collected; (2) property must be assessed
at its ''true value.'' This must be done in order to prevent
unjust discrimination by selecting different modes of valuation,
as had occurred under the constitution of 1869. The constitu-

tion of 1890 manifestly intended that stocks, bonds and all other property should be assessed at what it was really worth, and not valued by any arbitrary rule, no discretion, as to valuation, being left to the legislature, as the courts had held was done by sec. 20, art. 12, of the constitution of 1869. When this is done, when these preliminary, but necessary, steps of assessment and valuation are taken, in order to complete and carry the plan into effect, the third rule is announced: (3) Property shall be taxed in proportion to its value, and taxation shall be equal and uniform. These are the three rules upon which the entire plan of taxation is reared; you cannot destroy one without marring the symmetry of the whole.

Does the statute under consideration conform to the rules here announced? We think not. "Property shall be taxed in proportion to its value," means property shall pay taxes in proportion to its value. It can mean nothing else. The constitution says property shall be assessed for taxes at its true value. The purpose of assessment, is in order that taxes may be lawfully levied; the purpose of valuation, is in order that a just proportion of taxes may be collected. To hold that, after property is assessed for *ad valorem* taxes, under general laws, after a just valuation has been placed upon it, the legislature can intervene and grant a special privilege to some favored class by arbitrarily reducing the rate of levy imposed, would be to make of the law a mockery and a sham. We cannot sanction any such legal legerdemain. Yet, this is the real effect of the statute under consideration. After deciding that banks and solvent credits shall be subjected to *ad valorem* taxation, as is all other property, after it is assessed for taxes under general laws and by uniform rules, at its true value, the legislature, by this statute, undertakes to relieve this species of property from its just proportion of taxes, thus violating that clear mandate of the constitution which declares that taxation shall be equal. "Equality of taxation means apportioning the contributions of each person towards the expenses of the government, so that he

shall feel neither more nor less inconvenience, from his share of the payment, than every other person experiences.'' Mills' Pol. Econ., book 5, chap. 2, par. 2.

In the case at bar, the Mississippi State Bank did not pay taxes, upon its property in proportion to its value. We hold, therefore, that the provision of section 3, chapter 29, acts of 1894, relied on by appellee, is violative of section 112, constitution 1890, and is null and void.

We do not here decide whether, under the constitution of 1890, the legislature has the power to exempt from taxation any species of property, individual or corporate, not specially mentioned in that instrument. As it is not absolutely essential to the determination of this case, we refrain from expressing any views.

This decision only goes to this extent, that when *ad valorem* taxes are levied there can be no discrimination in rates between one species of property and another; each dollar of property must pay its just proportion of tax; the burden of government must be adjusted equally. When the state undertakes to collect toll from her citizens, the hand of the tax gatherer must fall with equal weight upon all. So reads the plain letter of our organic law; so let it stand. We will graft no vicious exception upon it. It follows that the judgment of the court below must be reversed, the demurrer overruled, and the cause remanded. So ordered.

Woods, C. J., dissented.

After the delivery of the foregoing opinion on the merits, and the entry of judgment in accordance therewith, a motion was made by the appellee to vacate and set aside the judgment for the reasons stated in the opinion thereon.

*Calhoon & Green* and *Brame & Alexander*, for the motion, *Mayes & Harris*, contra.

Woods, C. J., delivered the opinion of the court.

The motion is in these words, viz.: "Comes the appellee and shows to the court that the order reversing the judgment herein, and remanding this case for a new trial, entered on May 17, 1897, was based upon the judgment and decision of two special judges, and over the objection and contrary to the judgment and decision of the chief justice, and that one of the special judges participating in said order, and whose vote controlled in entering the same, was, at the time, *functus officio*, the Hon. S. H. Terral, a regular judge of this court, having qualified on May 10, 1897, as the successor of the Hon. T. R. Stockdale, disqualified. For these reasons the said order of reversal was and is void, and the case is still pending in this court, and undetermined; wherefore, appellee moves the court to set aside said order, that the cause may be proceeded with regularly by the court lawfully constituted, and, if necessary, that the cause be remanded to the docket."

At the March term, 1897, of this court, the Hon. A. H. Whitfield, then and now one of the judges of this court, and the Hon. T. R. Stockdale, then a judge of this court, were disqualified to sit on the hearing of the case named and to take part in its consideration and determination. The disqualification of these two judges was accordingly certified, as required by law, to the governor of the state, by the remaining judge who was qualified, and, thereupon, by a commission, signed by the governor and attested by the signature of the secretary of state and the affixing of the great seal of the state, the Hon. Jeff Truly and the Hon. W. G. Orr were appointed special judges to "preside in said cause of *Wirt Adams, Revenue Agent,* v. *Mississippi State Bank,* as the same appears upon the docket of said court for consideration at the present term thereof, and the said Jeff Truly and W. G. Orr are hereby authorized to do and perform all things pertaining to said cause as fully, in every respect, as the said A. H. Whitfield and T. R. Stockdale, judges, could do if they were not disqualified and were present and presiding."

This commission of these special judges was issued on March 2, 1897, and was filed in the office of the clerk of this court on the day following. On the same day, March 3, 1897, the two special judges appeared in court, and, upon the retirement of the two regular judges who were disqualified, took their places upon the bench as members of this court under said commission. The cause was then called for trial by the presiding regular judge, and, before the court thus constituted by the regular judge, who was not disqualified, and the two special judges, the same was fully argued orally by counsel for the respective parties, and, after such oral argument, was then submitted upon written briefs of said counsel for consideration and determination.

On the ninth day of May, 1897, the term of office of the Hon. T. R. Stockdale expired by operation of law, and on the next day, the tenth of May, the Hon. S. H. Terral qualified as the successor of Judge Stockdale, and at once assumed and entered upon the discharge of his duties as a member of this court. On May 17, 1897, seven day after Judge Stockdale had retired and Judge Terral had been inducted into office, the court which had heard the argument of the cause, and which had considered and determined the same, decided the questions involved on appeal, and rendered judgment reversing the judgment of the court below, the two special judges concurring in opinion, and the regular judge dissenting. It is this judgment of reversal which the motion seeks to have set aside as void, for the reason, as alleged, that the special judge who was appointed in place of Judge Stockdale, disqualified, had no power or authority to take any part in the determination of the cause after the expiration of Judge Stockdale's term. The question thus presented involves the proper construction of section 165 of our constitution, and it has had protracted and anxious consideration. But in considering the motion, we have been constrained to examine and determine some questions that lie in front of the one to which we have just adverted.

It is necessary, first, to determine the precise character of the two special judges at the time of the rendition of the judgment which it is now sought to set aside. That they were mere intruders upon the bench is not asserted by anyone, nor could such assertion be maintained for an instant, in the face of the facts we have stated. The most heated imagination could not entertain such a thought. That they were judges *de jure* when they sat upon the hearing of the cause, and when they took part in the consideration of the case in the consultation room, up to the date of the expiration of Judge Stockdale's term, is not open to dispute. Were they judges *de jure* on May 17, 1897, when the case was decided? That need not be entered upon by us, for that is the point involved in the proper interpretation of section 165 of the constitution. Whether these special judges were judges *de jure* or not is immaterial under the view we take of the answer to be given to this inquiry, viz., were they, on May 17, judges *de facto?* If they were, what weight and value in law is the decision of May 17 entitled to receive? Is the decision of a *de facto* judge void or valid? And if not void, under what circumstances and by whom may it be attacked?

The text books and reported cases abound in definitions and explanations of the words "officer *de facto,*" and, while employing a wide variety of terms, there is substantial harmony in the material and vital matters entering into the definitions. Throop, in his late and very useful work on Public Offices, collates and contrasts many of these definitions. We adopt this definition, borrowed almost verbatim from that author, because of its singular conciseness and clearness: "An officer *de facto* is one who exercises the powers and discharges the functions of an office, being then in possession of the same under color of authority, but without actual right thereto." Many authorities of great value maintain that there must be color of title as well as color of authority, and this, we strongly incline to think, is the sound view. We adopt it in the present case, and we find in its application here now this state of facts: The special judges

on May 17 were exercising the powers and discharging the duties of judges of this court; they were then in possession of their offices, unchallenged by anyone, and with the assent of the bench, the regular judges, and of the bar; so far as engaged in this cause, they acted under color of authority, and, clearly, under color of title.  By every text book and reported case examined by us, the special judges were, at least and certainly *de facto* judges.  See § 3065, code, and cases there cited.

It would be an affected display of research to parade the multitudinous authorities in support of our holding.  We refer generally to the long line of cases cited by Throop, and those cited by Works in his treatise on "Courts and their Jurisdiction."

Being, then, judges *de facto*, was the judgment of the court of which they were members void?  There can be but one answer to the question, and that is, the judgment was not void. In all the adjudications we have been able to find, there is not a dissenting voice as to the absolute correctness of this answer. As to the public generally, and as to third persons, the judgment of a special *de facto* judge stands exactly in the attitude of a judgment rendered by a judge *de jure*, and this proposition rests upon considerations affecting the orderly administration of justice and the welfare of society at large.  We have examined a few cases in which the appointment and qualification of the officer were so wholly irregular and without warrant in law, as to lead the courts to declare the action of such officer voidable, but, in these cases even, the objection to the officer was required to be promptly interposed, and, where the litigants submitted themselves and their rights to the determination and judgment of such officer, they were denied the right subsequently to attack the authority of the officer after an adverse decision, and this appears to us to be reasonable and just.  The cases on this point, and the preceding one, will be found collected in the text and notes of the two works of Throop and Works, to which we refer.

*Entertaining these views, the motion must be denied, without reference to section 165 of the constitution.*